**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| NANCY WHITE, on behalf of herself and all others similarly situated, | |
| Plaintiffs, | Case No.: 2:18-cv-00072-DRL |
| v. | |
| CASEY'S GENERAL STORES, INC., CASEY'S MARKETING COMPANY, and CASEY'S RETAIL COMPANY, | |
| Defendants. | |
| ----------------------------------------------------- | |
| SUMMER KESSLER, on behalf of herself and all others similarly situated, | |
| Plaintiffs, | Case No.: 2:26-cv-00045-DRL |
| v. | |
| CASEY'S GENERAL STORES, INC., CASEY'S MARKETING COMPANY, and CASEY'S RETAIL COMPANY, | |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT**

Named Plaintiffs Nancy White and Summer Kessler, individually and on behalf of themselves and approximately 2,600 Opt-In Plaintiffs (collectively, "Plaintiffs"), and Defendants Casey's General Stores, Inc., Casey's Marketing Company, and Casey's Retail Company (collectively, "Defendants") have reached a Settlement in the above-captioned consolidated action. Plaintiffs now provide the instant Settlement Agreement for the Court's approval and submit that the Settlement is a fair and reasonable resolution of an eight-year bona fide dispute between the

1

Parties. Plaintiffs request that the Court enter the proposed Order approving the Parties' Settlement. Defendants do not oppose this motion.

In this action, Plaintiffs claimed that Defendants violated the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., misclassifying Store Managers as exempt from overtime. Defendants denied the allegations. The Parties negotiated at arm's length, including twice through private mediation, and reached agreement on settlement terms memorialized in a Settlement Agreement and Release, attached hereto as Exhibit A.

Plaintiffs ask, consistent with the Parties' Settlement Agreement, that the Court approve: (i) the Settlement Agreement and its terms, providing for a Collective Settlement Fund of $6,000,000.00 and (ii) Service Payments of up to $10,000.00 each to Named Plaintiffs Nancy White and Summer Kessler.  The Collective Settlement Fund includes Minimum Payments of $150 to each of the approximately 450 Plaintiffs who did not work any workweeks within the Three-Year Limitations Period and who submitted a consent to join *Kessler* or *White*.

Defendants and Collective Counsel have separately negotiated and agreed that Defendants will pay Collective Counsel attorneys' fees and costs totaling $5,000,000.00 which includes the litigation costs and expenses and the costs for conditional certification notice and settlement administration in the *Kessler* and *White* matters.

As set forth in the accompanying memorandum of law, the Settlement represents a fair and reasonable resolution of a bona fide dispute and should be approved in all respects.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     The White Action

In 2017, Collective Counsel began their investigation of claims that Store Managers were

---

[1] A detailed litigation history is included in the Declarations of Gregg I. Shavitz, Esq. and Marc Hepworth, Esq.

misclassified as exempt at Casey's and interviewed Store Managers, reviewed the store operational practices, assessed the level of corporate control over the stores, and analyzed the primary duties of Store Managers. After completing the investigation, on February 16, 2018, Joy McColley filed a Complaint in this Court alleging that Defendants violated the overtime provisions of the FLSA by misclassifying her and other Casey's Store Managers as exempt from overtime pay. Dkt. No. 1. Named Plaintiff Nancy White was later substituted for McColley as the Named Plaintiff in this action. Dkt. No. 296.

On March 31, 2021, the Court granted Plaintiffs' motion to conditionally certify an FLSA collective action consisting of "all current and former Casey's store managers throughout the United States who are or were classified as exempt store managers during the Collective Action Period." Dkt. No. 131. Following the Court's conditional certification order, about 2,000 Opt-In Plaintiffs filed written consents to join the *White* action as party-plaintiffs pursuant to 29 U.S.C. § 216(b).

**B.      The Kessler Action**

On December 19, 2022, Summer Kessler filed a Complaint in the United States District Court for the Southern District of Illinois, alleging that Defendants violated the overtime provisions of the FLSA by misclassifying her and other Casey's Store Managers as exempt from overtime pay.

On October 13, 2023, the *Kessler* court granted the Parties' stipulation to conditionally certify an FLSA collective. Following conditional certification, about 570 Opt-In Plaintiffs filed written consents to join the Kessler action as party-plaintiffs pursuant to 29 U.S.C. § 216(b).

**C.      Consolidation of the Actions**

The parties stipulated to consolidate the *White* and *Kessler* actions for the purpose of settlement approval.

**D.      Discovery and Investigation**

Since the filing of the *White* and *Kessler* actions, Plaintiffs embarked on extensive investigation and discovery.  The Parties exchanged discovery requests and responded to requests for production and interrogatories and engaged in extensive ESI conferrals and productions related to the Store Manager role, store operations and Casey's corporate structure.  Defendants served several sets of payroll data, and employment records for the collective members.  The parties took depositions of Store Managers, District Managers, store-level employees, and corporate employees. Collective Counsel conducted a thorough investigation of the facts underlying Plaintiffs' claims, evaluated the information received from Defendants, and assessed Defendants' defenses.  Through this discovery process, both sides had sufficient information to evaluate the strengths and weaknesses of the claims and defenses, allowing for informed settlement negotiations.

**E.      Settlement Negotiations**

The Parties engaged in arm's length settlement negotiations.  The parties first mediated the case in 2021 with mediator Hunter Hughes, Esq.  The parties negotiated before and after that mediation but did not reach a resolution. On November 12, 2025, the Parties returned to the mediation table with experienced mediator Anne Marie Estevez, Esq.  The Parties continued to negotiate following the mediation session, and on January 26, 2026 finally agreed to terms, and then prepared the full settlement agreement and motion for approval.

The approximately 2,600 individuals participating in the *White* and *Kessler* actions are included in this settlement.  Through extensive litigation, investigation, discovery and vigorous arm's length negotiations, the Parties have reached a settlement that fairly and reasonably resolves the claims asserted in both actions.

## II.    SUMMARY OF SETTLEMENT TERMS

### A.    Collective Settlement Fund

Defendants have agreed to pay a maximum aggregate amount of $6,000,000.00 (the "Collective Settlement Fund") to settle the claims of Plaintiffs and Opt-In Plaintiffs in this consolidated action.[2]  The Collective Settlement Fund represents the sole source for all payments to be made to Plaintiffs and Opt-In Plaintiffs under the Settlement Agreement and Release and will be used to provide for: (i) Settlement Payments to the Named Plaintiffs and Opt-In Plaintiffs; (ii) Service Payments to Named Plaintiffs White and Kessler; and (iii) the Minimum Payments. Defendants' share of payroll taxes associated with the wage portions of the Settlement Payments will be paid in addition to the Collective Settlement Fund.

The Net Settlement Fund is the Collective Settlement Fund minus the below payments:

- $10,000.00 will be allocated as a Service Payment to Named Plaintiff Nancy White;

- $10,000.00 will be allocated as a Service Payment to Named Plaintiff Summer Kessler;

- Minimum Payments for certain Plaintiffs who opted into either the White or the Kessler actions but did not work any workweeks during the Three-Year Limitations Period.

The "Net Settlement Fund" represents the settlement proceeds that remain after the above-identified deductions are taken from the Collective Settlement Fund.  The Net Settlement Fund will be distributed to all Plaintiffs who performed work during the Three-Year Limitations Period, as described below.

### B.    Net Settlement Fund Distribution Methodology

The Net Settlement Fund will be divided among all Plaintiffs who performed work during the Three-Year Limitations Period on a pro rata basis.  The Settlement Administrator will calculate

---

[2] The Parties separately negotiated Collective Counsel's attorneys fees and costs totaling $5,000,000 which is discussed *infra* at 18-19.

each Plaintiff's Settlement Payment using the following methodology:

- The Settlement Administrator will divide the Net Settlement Fund by the total number of workweeks that all Plaintiffs worked during their respective Three-Year Limitations Periods to arrive at a per-workweek amount;

- The Settlement Administrator will then multiply this per-workweek amount by the total number of workweeks that each individual Plaintiff worked during his or her Three-Year Limitations Period to calculate each Plaintiff's Settlement Payment.

The "Three-Year Limitations Period" means the period of time three years prior to the date each Plaintiff and Opt-In Plaintiff joined the case through the Effective Date, and includes only the time that each Plaintiff and Opt-In Plaintiff worked as exempt-classified Store Managers. Because each Plaintiff opted into the action at different times, the Three-Year Limitations Period varies for each individual Plaintiff. Within twenty (20) days of the Court's Approval Order, Defendants shall provide the Settlement Administrator with a list containing each Plaintiff's name, last-known address, social security number, and the number of workweeks worked during his or her Three-Year Limitations Period. Defendants shall also provide the Settlement Administrator with a list containing each Plaintiff who will receive a Minimum Payment, including each such Plaintiff's name, last-known address, social security number, and dates of employment.

There are about 450 Plaintiffs who did not work any workweeks during the Three-Year Limitations Period and will receive only the Minimum Payment of $150. These individuals are receiving this payment because there was a legal issue regarding whether equitable tolling would make their claims timely and whether their claims would be valid. The Court initially denied that request, but Plaintiffs moved for reconsideration and, as such, the Parties agreed to a Minimum Payment for these individuals.

6

### C.    Tax Treatment

Fifty percent (50%) of each Settlement Payment and Minimum Payment paid to each Plaintiff will be deemed wages and will be subject to normal payroll tax withholding and W-2 reporting.  Fifty percent (50%) of each Settlement Payment and Minimum Payment will be deemed liquidated damages, and the Settlement Administrator will issue IRS Form 1099-MISC regarding each Plaintiff's liquidated damages payment.

Defendants shall be responsible for all employer-paid taxes on the wage portions of the Settlement Payments and Minimum Payments, including FICA, FUTA, and state unemployment taxes.  These employer-paid taxes shall be paid by Defendants in addition to the Collective Settlement Fund and shall not reduce the amounts available for distribution to Plaintiffs.  The Settlement Administrator shall issue all necessary tax forms related to the Settlement Payments and Minimum Payments to Plaintiffs.

### D.    Settlement Administration

The Parties have agreed to and request that the Court appoint Rust Consulting, Inc. as the Settlement Administrator.  The Settlement Administrator shall be responsible for establishing and maintaining a Qualified Settlement Fund ("QSF"), into which the Collective Settlement Fund will be deposited in accordance with the Settlement Agreement.

The Settlement Administrator's responsibilities include: calculating the Settlement Payments allocated to each Plaintiff based on the criteria set forth in the Agreement; distributing Court-approved Service Payments to Named Plaintiffs White and Kessler from the QSF; paying appropriate taxes from the QSF (including the employer taxes due from Defendants in addition to the Collective Settlement Fund); complying with all applicable tax reporting obligations, including issuing 1099s and W-2s to Plaintiffs; and distributing Settlement Checks to all Plaintiffs.

## IV.    LEGAL STANDARD FOR FLSA COLLECTIVE ACTION SETTLEMENT APPROVAL

"The Seventh Circuit has not addressed the question of whether stipulated agreements under the FLSA require court approval, but district courts in the Seventh Circuit routinely require such approval." *Frazier v. Omnicare, Inc.*, 2024 U.S. Dist. LEXIS 70454, at *3 (S.D. Ill. Apr. 17, 2024) (quotation and citation omitted).  Courts in the Seventh Circuit and other circuits apply a one-step approval process to determine whether an FLSA settlement should be approved, rather than the two-step preliminary and final approval process used in Rule 23 class action settlements. This streamlined process reflects the reduced due process concerns inherent in opt-in collective actions.  *Stokes v. Consolidated Wings Investment, LLC*, No. 15-cv-01932-RLY-DKL (S.D. Ind.), ECF No. 61 (approving FLSA collective action settlement in one-step); *Briggs v. PNC Financial Services Group, Inc.,* No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016)) ("'A one-step settlement approval process is appropriate []'" in FLSA settlements.).

Under Section 216(b) of the FLSA the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a bona fide dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Roberts v. Apple Sauce, Inc.,* No. 3:12-cv-830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014). The Court, therefore, should perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation" resulting from arm's length negotiations. Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a bona fide dispute

between the Parties. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

Courts typically rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Id.* Particularly where there was an arm's-length negotiation between the parties and that the parties had sufficient information to evaluate the merits of the settlement. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlements of litigation. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

In sum, the Court's inquiry focuses on ensuring that an employer does not take advantage of its employees in settling their claims for wages, rather than on the due process concerns that would be present in a Rule 23 class action settlement. *Woods*, 686 F.2d at 579-80. Because the settlement is on an opt-in basis, the Agreement has no binding effect on absent members of the collective, only those that affirmatively accept the benefits of the Agreement by opting in. As demonstrated below, the settlement at issue here satisfies both prongs of the *Lynn's Food Stores* standard and warrants approval by this Court.

## V. THE SETTLEMENT IS THE PRODUCT OF CONTESTED LITIGATION AND RESOLVES A BONA FIDE DISPUTE

### A. The Settlement Is the Product of Contested Litigation

The Settlement is a result of contested litigation that has extended over several years. The *White* action has been pending for more than eight years, having been filed on February 16, 2018, and was resolved only after conditional certification of an FLSA collective, substantial written discovery, document production, depositions and expert disclosures. The *Kessler* action was filed on December 19, 2022, and similarly involved conditional certification, discovery, and extensive arm's length negotiations before settlement.

Both actions required the Parties to move through significant procedural hurdles,

conditional certification, complex discovery, a massive production of documents and ESI, expert discovery relating to certification, liability, and damages issues, production of time and payroll records which required manual review for about 2,600 individuals, multiple mediations, and many Court appearances addressing discovery issues. Shavitz Decl. ¶ 17-67 (describing litigation history). Through this discovery process, both sides obtained sufficient information to evaluate the strengths and weaknesses of the claims and defenses at issue in these actions.

For these reasons, the Court should conclude that the proposed Settlement is the byproduct of contested litigation.

## B.    The Settlement Resolves a Bona Fide Dispute

A bona fide dispute between the Parties existed over several critical issues. Plaintiffs alleged that Defendants violated the FLSA because Defendants misclassified Store Managers as exempt from overtime when they should have been classified as non-exempt employees entitled to overtime compensation. Defendants denied Plaintiffs' allegations, denied that Defendants violated the FLSA, asserted that Store Managers were properly classified as exempt from overtime, and specifically denied that Plaintiffs are entitled to any damages.  Serious questions of law and fact placed the ultimate outcome in doubt.

The Parties also disputed whether continued collective treatment of Plaintiffs' FLSA claims would be appropriate.  If the matter was not resolved by settlement, there was a risk that Plaintiffs would not succeed in maintaining collective treatment of the action because Defendants argued that there were variations among the stores and Store Managers' claims could not be fairly adjudicated on a collective basis.

This procedural posture, where Defendants denied the material facts and any violation of the FLSA, vigorously defending their position throughout the litigation, and where the Parties conducted extensive discovery for years in connection with both the Plaintiff and members of the

FLSA Collective, demonstrates a bona fide dispute between the Parties. The Parties' positions were staked out in the Parties' pleadings and throughout settlement discussions, and the Court should readily conclude a bona fide dispute exists between the Parties.

## VI.   THE SETTLEMENT IS FAIR AND REASONABLE

"If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Frazie*r, 2024 U.S. Dist. LEXIS 70454, at *3 (quotation omitted).  "A reviewing court normally approves a settlement where it is based on contentious arm's-length negotiations, which were undertaken in good faith by counsel and where serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Id.*  Each of these factors is satisfied here.

### A.   The Settlement Was Reached Through Arm's Length Negotiations Between Experienced Counsel and With Mediators

The Settlement was reached through extensive arm's length negotiations between experienced counsel representing adverse interests and with a well-regarded wage and hour collective action mediator. Both sides had highly experienced wage and hour collective action counsel who vigorously represented their clients for eight years.  Both sides had competent, adversarial counsel fully capable of evaluating the strengths and weaknesses of the claims and defenses.  Over the 8 years of litigation, the parties regularly discussed settlement and tried at many intervals to make progress on the settlement front.

But ultimately, it was only after substantial discovery had been conducted, providing both sides with sufficient information to make informed judgments about the merits of the case, that the parties were able to reach this settlement. The Parties also utilized the services of two mediators who have decades of wage and hour experience to assist them in resolving the matter.  This Court

11

also handled many court conferences where the parties advocated for their positions and the Court was able to witnesses the dynamic legal and factual issues which dominated this case. This procedural history demonstrates that the settlement was the product of good faith, arm's length negotiations between well-informed parties represented by experienced counsel.

**B.    Serious Questions of Law and Fact Place the Ultimate Outcome in Doubt**

The ultimate outcome of this litigation was highly uncertain due to significant disputed issues of both law and fact. If the litigation had continued, Plaintiffs would have faced substantial obstacles and risks at multiple stages of the proceedings.

There is a risk of decertification. Defendants planned to move to decertify the collective action, arguing that differences among Store Managers and store locations precluded collective treatment. If Defendants succeeded in decertifying the collective, individual Plaintiffs would be required to litigate their claims separately, potentially leaving many Plaintiffs without any remedy due to the prohibitive costs of individual litigation. Furthermore, to the extent the matter was decertified, it would have easily added additional years of litigation without which there would be no relief for the collective members.

There are challenges when proving systematic FLSA violations. Plaintiffs alleged that Defendants maintained a uniform policy of misclassifying Store Managers as exempt from overtime. However, Defendants would argue that Store Manager duties varied significantly across approximately 2,600 store locations and that individualized determinations would be required to assess the validity of Casey's classification. Proving a systematic violation across such a large and geographically dispersed workforce also presents evidentiary challenges.

There is a risk of summary judgment on exemption issues. Defendants asserted that Store Managers were properly classified as exempt under the FLSA's executive exemption. Courts applying the executive exemption engage in fact-intensive inquiries regarding primary duties,

12

management responsibilities, and supervisory authority. Defendants could argue that Store Managers satisfied the exemption criteria based on their job duties and level of authority. In 2019, Defendants received a Department of Labor Compliance Action Report that found one Store Manager was correctly classified as exempt, which Defendants would rely on for summary judgment on liability and good faith issues. If the Court granted summary judgment in favor of Defendants on exemption grounds, Plaintiffs would recover nothing.

Even if Plaintiffs established liability, proving damages for approximately 2,600 individual Plaintiffs would require extensive analysis of payroll records, work schedules, and hours worked over multi-year periods. Defendants would contest damage calculations and argue that many Plaintiffs could not establish compensable overtime hours with sufficient certainty. The complexity of damage calculations presented significant risks regarding the ultimate recovery amount.

Moreover, if the case proceeded to trial, there is no guarantee that a jury would find in Plaintiffs' favor on liability or award substantial damages. Defendants would present evidence that Store Managers exercised genuine management authority and were properly classified as exempt employees. The outcome at trial is far from certain.

Plaintiffs faced significant risk that the Court or jury would find for the employer on the issue of willfulness in light of the claim of misclassification being against the highest position in the store. Moreover, Casey's produced in discovery evidence that the Department of Labor supported the exempt classification which was a hurdle for Plaintiffs. To the extent it was determined that the classification was not reckless, then that would have eliminated any claim for damages in the third year of the statute of limitations. In settlement, Plaintiffs' counsel recovered damages for all the weeks at issue in the three year statute of limitations.

Continued litigation through summary judgment, trial, and appeals would require years of

additional litigation and substantial expense. Even if Plaintiffs prevailed at trial, Defendants would likely appeal, further delaying any recovery. Any eventual judgment would be subject to reversal or reduction on appeal.

Conversely, Defendants faced significant risk of liability and substantial damages if Plaintiffs prevailed. The substantial risks facing both sides demonstrate that serious questions of law and fact placed the ultimate outcome in considerable doubt.

### C.    The Value of the Settlement Is Significant

The $6,000,000.00 Collective Settlement Fund represents substantial, immediate relief to the collective. "The value of [this] immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation" which Plaintiffs could lose and then obtain nothing. *Frazie*r, 2024 U.S. Dist. LEXIS 70454, at *3. After deducting service payments ($20,000.00 total) and Minimum Payments to certain plaintiffs (estimated to be $67,500), the Net Settlement Fund of approximately $5,912,500 will be distributed to approximately 2,600 Plaintiffs on a pro rata basis according to workweeks worked during their respective Three-Year Limitations Periods.[3] This is a fair recovery. Defendants scheduled Store Managers to work 45 hours per week. If 5 hours of overtime are assumed for 70% of the workweeks during the Three-Year Limitations Period and the half-time method of calculating damages is used per *Urnikis-Negron v. American Family Insurance Co*., 616 F.3d 665 (7th Cir. 2010), then Plaintiffs' potential unpaid overtime damages are about $8,099,859.04. The parties agree that not all weeks are overtime weeks due to vacation, sick days, personal days, and holidays which is why 70% of the workweeks are estimated. To the extent Plaintiffs had recovered 5 hours of overtime per week, then $8 million in

---

[3] The settlement provides the benefit of a three-year statute of limitations period, however there is no guarantee that at trial Plaintiffs would be able to make a showing establishing willfulness sufficient ensure a three-year statute of limitations period.

backpay would have been recovered.  The $6,000,000 recovered for the collective is 70% of the scheduled hours damages, and is a reasonable settlement amount in light of all the litigation risks and will be an average of about $2,274.04 per collective member.  Courts have consistently approved settlements representing a fraction of the maximum potential recovery where, as here, significant litigation risks exist. *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 578 (N.D. Ill. 2011) (approving a settlement representing approximately 10% of the class's maximum potential recovery); *see also Bruzek v. Husky Energy Inc.,* No. 18-CV-697-WMC, 2021 WL 9474270, at *3 n.3 (W.D. Wis. Aug. 6, 2021)) (approving settlement that is roughly 10% of maximum recovery value). Plaintiffs submit that the quality of this result speaks for itself, and the inherent risks in ongoing litigation more than support this Court's approval of the Parties' settlement.

This settlement provides certainty of recovery now rather than the possibility of uncertain recovery years in the future after protracted and expensive litigation. The pro rata distribution methodology ensures that settlement payments are tied directly to each Plaintiff's actual work history and potential damages exposure. Importantly, the settlement eliminates the very real risk that Plaintiffs would recover nothing if Defendants prevailed on their defenses.

### D.    Collective Counsel and Named Plaintiffs Support the Settlement

Collective Counsel have comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and have ample evidence on which to base an informed assessment of the proposed Settlement. Hepworth Decl. ¶ 16-64; Shavitz Decl. ¶ 17-67.  Based on Collective Counsel's knowledge of the case and the applicable law, as well as their extensive experience in FLSA collective actions and wage and hour litigation, Collective Counsel believe the Settlement is fair and reasonable and in the best interests of all Plaintiffs. Hepworth Decl. ¶ 64; Shavitz Decl. ¶ 5-67. This factor supports approval of the Settlement. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("the district court was entitled to give consideration to the opinion of

competent counsel that the settlement was fair, reasonable and adequate."); *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 578 (2011).

Additionally, Named Plaintiffs Nancy White and Summer Kessler participated in settlement discussions and support the proposed Settlement. Collective Counsel have also communicated with many collective members about this result, and they approve it and look forward to payment after this eight-year long litigation. Their approval, combined with the judgment of experienced counsel, provides strong evidence that the Settlement represents a fair and reasonable resolution of this litigation.

Defendants do not oppose this motion for settlement approval, further demonstrating the Parties' consensus that the Settlement is appropriate.

In light of the foregoing, the Court should approve the Settlement as fair and reasonable.

## VII.  THE REQUESTED SERVICE AWARDS ARE APPROPRIATE

The Settlement Agreement provides for Service Payments of up to $10,000.00 to Named Plaintiff Nancy White and up to $10,000.00 to Named Plaintiff Summer Kessler, subject to Court approval. These payments acknowledge the significant time, effort, and risk undertaken by the Named Plaintiffs in pursuing this litigation on behalf of the approximately 2,600 Opt-In Plaintiffs and are in addition to any payments they receive as their pro rata share of the Net Settlement Fund.

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Courts regularly approve service awards to named plaintiffs in collective actions in recognition of the additional burdens they shoulder on behalf of the FLSA Collective members. *Scott v. Freeland Enters., Inc.*, No. 1:22-CV-43-HAB, 2023 WL 4424752, at *2 (N.D. Ind. June 5, 2023). Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks

incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013). In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class; (2) how much the class has benefited from those actions; and (3) the time and effort the plaintiffs expended in pursuing the litigation. *Cook*, 142 F.3d at 1016.

Named Plaintiff Nancy White agreed to succeed Joy McColley as Named Plaintiff in the *White* action. *See* Dkt. No. 296. Ms. White has been active in prosecuting this action to a successful resolution. Ms. White consulted regularly with Collective Counsel regarding the facts and legal theories underlying the claims, responded to written discovery requests. Hepworth Decl. at ¶ 62. Ms. White actively participated in settlement negotiations, including the private mediation with Anne Marie Estevez on November 12, 2025, and continued discussions that led to this settlement. *Id.* Ms. White devoted substantial time and effort to this case and assumed significant personal and professional risk by serving as Named Plaintiff against her former employer for the benefit of approximately 2,600 collective members. *Id.*

Named Plaintiff Summer Kessler initiated the Kessler action on December 19, 2022, and has similarly provided substantial assistance throughout the prosecution of that action. Hepworth Decl. at ¶ 63. Ms. Kessler consulted with Collective Counsel on numerous occasions regarding the facts and legal issues in the case, discussed and approved pleadings, responded to written discovery requests, and produced documents. *Id.* Ms. Kessler also participated in settlement discussions that resulted in this Settlement. *Id.* Like Ms. White, Ms. Kessler assumed the risk and burden of serving as a Named Plaintiff in an action against her former employer, devoting her time and effort for the benefit of all collective members. *Id.*

The requested Service Payments of $10,000.00 to each Named Plaintiff are reasonable and

appropriate given the duration and complexity of this litigation, the substantial benefit conferred on approximately 2,600 collective members, and the time, effort, and risk assumed by the Named Plaintiffs. The *White* action has been pending for more than eight years, and White readily stepped in the role of Named Plaintiff following the death of the Named Plaintiff.  Service awards of this amount are consistent with awards approved in similar FLSA collective actions. *See, e.g., See Scott v. Freeland Enters., Inc.*, No. 1:22-CV-43-HAB, 2023 WL 4424752, at *2 (N.D. Ind. June 5, 2023) (approving $10,000 service award); *Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 205 (N.D. Ill. 2018); *Martin v. JTH Tax, Inc.*, 13–cv–6923 (N.D. Ill. Sept. 16, 2015), ECF No. 86 ¶ 21 (awarding $10,000); *Ossola v. American Express,* 13–cv–4836 (N.D. Ill. Dec. 2, 2016), ECF No. 379 ¶ 11 (awarding $10,000); *Martin v. Dun & Bradstreet, Inc*., 2014 WL 9913504, at *3 (awarding $20,000).

For these reasons, the Court should approve the requested Service Payments to Named Plaintiffs Nancy White and Summer Kessler.

## VIII.   DEFENDANTS SEPARATELY AGREED TO PAY COLLECTIVE COUNSEL ATTORNEYS' FEES AND COSTS

The FLSA has a fee-shifting provision allowing for fees and costs in addition to any amounts recovered by the Plaintiffs.  29 U.S.C. § 216(b).  To date, Collective Counsel collectively spent 11,340.10 hours to date on this case and incurring more than $8,675,491.50 in attorneys' fees.  Gilchrist Decl. at ¶ 8 (54.7 hours and $39,280.00 in lodestar); Hepworth Decl. at ¶ 68 (6,298.70 hours and $5,559,815.00 in lodestar); Shavitz Decl. at ¶ 72 (4,945.4 hours and $3,053,948 in lodestar); Werman Decl. at ¶ 25 (41.3 hours and $22,448.50 in lodestar).  Such does not include the additional hours overseeing the settlement administration and assisting Plaintiffs with inquiries regarding the settlement and their 2027 tax questions.

Over the past 8 years, Collective Counsel also spent $321,926.80 in costs and expenses.

Gilchrist Decl. at ¶ 6 ($410); Hepworth Decl. at ¶ 66 ($114,620.01); Shavitz Decl. at ¶ 70 ($206,494.79); Werman Decl. at ¶ 25 ($402). Collective Counsel's fee agreement with Plaintiffs provides for Collective Counsel to be paid the greater of a percentage of the fund, or their lodestar, plus their costs. In this case, despite incurring $8,675,491.50 for attorney's fees and costs, Collective Counsel compromised and settled the fee and costs claims for $5,000,000.

Unlike class actions which require approval of attorneys' fees and costs, "29 U.S.C. § 216 does not require approval of settled attorney fees." *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). "When the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement." *Id.* at 1027; *Bernardez v. Firstsource Sols. USA, LLC*, 2022 U.S. Dist. LEXIS 71531, at *19 (W.D. Ky. Apr. 19, 2022) ("Because this is not a common fund case and there is evidence that attorneys' fees were negotiated separately, the Court is not required to review the attorneys' fees for reasonableness."). As in *Barbee* and *Bernardez*, the Plaintiffs and Opt-In Plaintiffs' settlement amount is not contingent on the fee and cost amount to Collective Counsel. As such, approval of the Plaintiffs' attorneys' fees and costs is not required.

If approval of the Collective Counsel's fees and costs were required, they are reasonable. The investigation of these claims began in 2017 and litigation followed in 2018. Collective Counsel undertook this matter against a multi-billion dollar company which was focused on defending their exempt classification of Store Managers and only agreed to a settlement after 8 years of litigation. Collective Counsel spent 11,340.10 hours litigating these cases. *See* Declarations of Scott Gilchrist, Esq., Marc Hepworth, Esq., Gregg Shavitz, Esq., and Doug Werman, Esq. The litigation was challenging as Store Managers worked in multiple states under different managers and there was an enormous document production of about 560,000 bates

labeled pages of documents, e-mails, and large data files with pay and time records, plus an additional 12 terabytes of data from the Casey's Connection system which contained store communications, documents, checklists, task lists, and other information which Collective Counsel reviewed.  The discovery efforts required in-depth investigations of the opt-ins, their co-workers, their managers, and the ways in which Casey's stores were managed in the various states that the opt-ins worked.  Collective Counsel's declarations outline many of the tasks performed and demonstrate the major effort involved to obtain this relief for our clients against an employer that strongly disputed the claims.

Collective Counsel's efforts and focus on this case took a massive investment of time, money, and risk which precluded them from taking on other cases to ensure that this case was properly staffed and managed.  In summary, the fees and costs negotiated between the parties to settle the fees and costs of Collective counsel are reasonable.

## IX.    CONCLUSION

The Parties reached this Settlement as the result of contested litigation involving two separate actions, and it resolves a bona fide dispute between the Parties over FLSA violations affecting approximately 2,600 current and former Store Managers.  Accordingly, Plaintiffs respectfully request that the Court approve the settlement and enter the proposed Order which is attached as Exhibit B.

Dated: April 22, 2026                        Respectfully submitted,

By:_*Gregg J. Shavitz*_____
Gregg I. Shavitz
Michael Palitz (New York office)
Camar Jones
Marilyn Linares
SHAVITZ LAW GROUP, P.A.
622 Banyan Trail, Suite 200
Boca Raton, Florida 33431
Telephone: (561) 447-8888

Facsimile: (561) 447-8831
E-mail: gshavitz@shavitzlaw.com

Marc S. Hepworth
Charles Gershbaum
David A. Roth
Rebecca Predovan
HEPWORTH, GERSHBAUM & ROTH, PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
E-mail: mhepworth@hgrlawyers.com
E-mail: cgershbaum@hgrlawyers.com
E-mail: droth@hgrlawyers.com
E-mail: rpredovan@hgrlawyers.com

Scott Gilchrist
Richard Shevitz
CohenMalad LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 548-8454
E-mail: sgilchrist@cohenmalad.com
E-mail: rshevitz@cohenmalad.com

Douglas Werman
Werman Salas P.C.
77 W Washington St, Ste 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008
E-mail: dwerman@flsalaw.com

**Attorneys for Plaintiffs**