IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **NANCY WHITE, on behalf of herself and all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**CASEY'S GENERAL STORES, INC., CASEY'S MARKETING COMPANY, and CASEY'S RETAIL COMPANY,**<br><br>Defendants. | Case No.2:18-cv-00072 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **SUMMER KESSLER, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**CASEY'S GENERAL STORES, INC. CASEY'S MARKETING COMPANY, and CASEY'S RETAIL COMPANY,**<br><br>Defendants. | No. 2:26-CV-00045 |

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between Plaintiff Nancy White, individually and on behalf of similarly situated individuals, including the White Opt-In Plaintiffs, as defined herein, Plaintiff Summer Kessler, individually and on behalf of similarly situated individuals, including the Kessler Opt-In Plaintiffs, as defined herein, and Defendants Casey's General Stores, Inc., Casey's Marketing Company, and Casey's Retail Company (collectively "Casey's").

### RECITALS

WHEREAS, on February 16, 2018, Joy McColley (later succeeded by Named Plaintiff by Nancy White) filed her Complaint in the first above-captioned action (the "White Lawsuit"), alleging, *inter alia*, that Casey's violated the overtime provisions of the Fair Labor Standards Act,

29 U.S.C. § 201, *et seq*. ("FLSA") on her own behalf and on behalf of all similarly situated employees. Named Plaintiff McColley alleged Casey's violated the FLSA by misclassifying her and other Casey's Store Managers as exempt from overtime;

WHEREAS, on December 19, 2022, Summer Kessler filed her Complaint in the second above-captioned action ("the Kessler Lawsuit"), alleging, *inter alia*, that Casey's violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") on her own behalf and on behalf of all similarly situated employees. Named Plaintiff Kessler alleged Casey's violated the FLSA by misclassifying her and other Casey's Store Managers as exempt from overtime;

WHEREAS, on March 31, 2021, the United States District Court for the Northern District of Indiana (the "White Court") granted the Plaintiffs' motion to conditionally certify an FLSA collective consisting of "all similarly situated current and former FLSA Collective Members who work or have worked for Defendant during the Collective Period (defined as February 16, 2015 to present) who elect to opt into this action." and ordered notice to be sent to the collective members;

WHEREAS, on October 13, 2023, the United States District Court for the District of Southern Illinois ("the Kessler Court") granted the Parties' stipulation to conditionally certify an FLSA collective consisting of "[a]ll exempt-classified Store Managers who work or worked for Defendants at any time from September 25, 2020 to the present, excluding those individuals who received notice" in the White Lawsuit  and ordered notice to be sent to the collective members;

WHEREAS, following the commencement of the White Lawsuit and the White Court's order conditionally certifying the FLSA collective, Opt-In Plaintiffs, as further defined herein, filed written consents to join the White Lawsuit as party-plaintiffs, pursuant to 29 U.S.C. § 216(b), and are now included in this settlement;

WHEREAS, following the commencement of the Kessler Lawsuit and the Kessler Court's order conditionally certifying the FLSA collective, Opt-In Plaintiffs, as further defined herein, filed written consents to join the Kessler Lawsuit as party-plaintiffs, pursuant to 29 U.S.C. § 216(b), and are now included in this settlement;

WHEREAS, the Parties participated in an arm's length, private mediation with experienced mediator Anne Marie Estevez on November 12, 2025;

WHEREAS, the Parties negotiated that the Defendants will pay the Plaintiffs (as defined below) $6,000,000.00;

WHEREAS, upon resolution of a negotiated resolution of the Plaintiffs' claims, the parties' counsel negotiated that the Defendants will pay Collective Counsel $5,000,000.00 as attorneys' fees and costs;

WHEREAS, the White Lawsuit and the Kessler Lawsuit were consolidated on April 9, 2026, in the Northern District of Indiana under case number, 2:26-cv-00045, for the purpose of settlement approval;

WHEREAS, the Parties desire to resolve all asserted claims, including the FLSA claims of Named Plaintiffs White and Kessler and all Opt-in Plaintiffs, without admission of liability or wrongdoing by anyone, or further litigation related to the FLSA claims or any other claims; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties enter into this Agreement, subject to the Court's approval, as follows:

1. **Definitions.**

    (a)    "Approval Order" means the Court's order granting approval of the Settlement.

    (b)    "Casey's" means Casey's Marketing Company, and any of its parent organizations, holding companies, predecessors, affiliates, subsidiaries (including Casey's General Stores, Inc., Casey's Retail Company, and CGS Stores, LLC), divisions, business units, joint venturers, and related companies and their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, contractors, agents, representatives, attorneys, insurers, partners, investors, shareholders, and administrators.

    (c)    "Check Cashing Period" means the one hundred twenty (120) day period following the date on which the Settlement Administrator mails the Settlement Checks. Settlement Checks not cashed within the Check Cashing Period shall become void, and the funds tied to such uncashed checks shall be sent to the unclaimed funds department of the specific State in which the Plaintiff worked for Defendants.

    (d)    "Collective Counsel" refers to Michael Palitz and Gregg Shavitz of the Shavitz Law Group P.A., Marc Hepworth, Charles Gershbaum, Rebecca Predovan, and David Roth of Hepworth, Gershbaum, and Roth PLLC, Doug Werman of Werman Salas P.C., and Scott D. Gilchrist and Richard E. Shevitz of CohenMalad LLP.

    (e)    "Collective Period" means the period beginning on February 16, 2015, and extending through the Effective Date, as further defined herein.

    (f)    "Collective Settlement Fund" means the maximum aggregate payment by Defendants pursuant to this Agreement of six million dollars and zero cents ($6,000,000.00). The Collective Settlement Fund will be the sole source for the Plaintiffs to be paid as part of this Settlement Agreement and Release, and shall include: (1) all Settlement Payments to the Plaintiffs; (2) any Service Payments approved for the Named Plaintiffs; and (3) the Minimum Payments. Except Defendants' share of payroll taxes associated with the Settlement Payments paid to the Plaintiffs, which Defendants shall pay in addition to the Collective Settlement Fund, the Company and the Releasees shall not pay or be required to pay any amount in connection with this Agreement above and beyond the Collective Settlement Fund to the Plaintiffs.

    (g)    "Collective Counsel's Attorneys' Fees and Costs" means the maximum aggregate payment by Defendants pursuant to this Agreement of five million dollars and zero

cents ($5,000,000.00). Collective Counsel's Attorneys' Fees and Costs is the amount the Releasees agreed to pay as part of this Settlement Agreement and Release to resolve potential liability for Collective Counsel's fees and costs in Kessler and White, and shall include: (1) Collective Counsel's attorneys' fees in the Kessler and White lawsuits; (2) all costs and expenses incurred by Collective Counsel's in the Kessler and White cases; (3) the costs of administration of the notice following conditional certification in Kessler and White; and (4) the Settlement Administrator's costs to administer this Settlement Agreement and Release.

(h)   "Day" or "days" refer to calendar days below unless specifically indicated as business days.

(i)   "Defendants" means Casey's General Stores, Inc., Casey's Marketing Company, and Casey's Retail Company, as further defined herein.

(j)   "Defendants' Counsel" means Littler Mendelson, P.C.

(k)   "Effective Date" means the latest of: (i) the date of final affirmance on any appeal of the Court's Approval Order; (ii) the date of final dismissal, with prejudice, of the last pending appeal from the Court's Approval Order; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Court's Approval Order.

(l)   "Lawsuit" means the consolidated *Kessler* and *White* lawsuits, which were filed and are pending in the United States District Court for the Northern District of Indiana.

(m)   "Minimum Payment" means a Settlement Payment of $150 to each Plaintiff who did not work any workweeks within the Three-Year Limitations Period and who submitted a consent to join *Kessler* or *White*. Each Plaintiff who did not work any workweeks within the Three-Year Limitations Period will receive a Minimum Payment, but will not receive any additional pro-rata share of the Net Settlement Fund. The Minimum Payments will be made by the Settlement Administrator out of the established Qualified Settlement Fund ("QSF"). Fifty percent (50%) of each Minimum Payment will be deemed wages and will be subject to normal payroll tax withholding and W-2 reporting. Fifty percent (50%) of each Minimum Payment will be deemed liquidated damages. The Settlement Administrator shall issue all necessary tax forms related to the Minimum Payments.

(n)   "Net Settlement Fund" shall mean the Collective Settlement Fund less: (i) all approved Service Payments to the Named Plaintiffs and (ii) the Minimum Payments made to each Plaintiff who did not work any workweeks within the Three-Year Limitations Period.

(o)   "Opt-In Plaintiffs" means the approximately 2,600 individuals who have consented to join the White Lawsuit or the Kessler Lawsuit as party plaintiffs pursuant to

Section 216(b) of the FLSA and any individual who submitted a consent to join form to the claims administrator after notice issued in White and Kessler.

(p)    "Parties" refers collectively to Plaintiffs and Defendants.

(q)    "Plaintiffs" refers collectively to Named Plaintiff and the Opt-In Plaintiffs.

(r)    "Qualified Settlement Fund" or "QSF" means the qualified settlement fund set up by the Settlement Administrator into which the Collective Settlement Fund and Collective Counsel's Attorneys' Fees and Costs will be deposited in accordance with this Agreement. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Approval Order.

(s)    "Releasees" refers to and includes Defendants and any of their parent organizations, holding companies, predecessors, affiliates, subsidiaries, divisions, business units, joint venturers, and related companies and their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, contractors, agents, representatives, attorneys, insurers, partners, investors, shareholders, and administrators, and any other related persons or entities, as well as any individual who could be included within the definition of "employer" under the Fair Labor Standards Act ("FLSA") and/or any other federal, state, or local law or ordinance pertaining to the payment of wages in any location where Plaintiffs worked or resided, including but not limited to all officers, directors, managers, agents, and employees of Defendants and the aforementioned entities in their personal capacities.

(t)    "Service Payment" means any payment to Named Plaintiff White or Named Plaintiff Kessler for either's service on behalf of the Opt-In Plaintiffs and discussed in more detail in Section 6(b).

(u)    "Settlement Administrator" means Rust Consulting.

(v)    "Settlement Checks" means checks issued to Plaintiffs for their share of the Net Settlement Fund calculated in accordance with this Agreement or the checks issued for Minimum Payments to each Plaintiff who did not work any workweeks within the Three-Year Limitations Period.

(w)    "Settlement Payment" means each Plaintiff's respective portion of the Net Settlement Fund and the Minimum Payments made to each Plaintiff who did not work any workweeks within the Three-Year Limitations Period.

(x)    "Three-Year Limitations Period" means the period of time three years prior to the date each Plaintiff and Opt-In Plaintiff joined the case to the Effective Date and includes only the time that each Plaintiff and Opt-In Plaintiff worked as exempt-classified Store Managers.

2.    This Agreement is entered into between the Plaintiffs and Defendants. This Agreement is subject to the terms hereof and approval by the Court for the Collective Settlement Fund. Plaintiffs

and Defendants agree to fully settle, compromise, and resolve all wage and hour claims, including but not limited to claims under the FLSA, state and local law pertaining to the payment of all hours worked and claims for unpaid wages (including overtime compensation) and related claims for liquidated damages, interest, penalties, fees and costs that were or could have been brought in the Lawsuit based on the facts pleaded, on the terms set forth in this Agreement.

3.      The Parties intend that the Approval Order shall be a final order with respect to the FLSA claims, and that, after its entry, the order shall not be appealed, challenged, or modified in any way without the agreement of all Parties. By not opting out of the settlement, the Named Plaintiffs and all Opt-In Plaintiffs shall waive any right they may have to appeal the Approval Order. The Parties agree the Opt-In Plaintiffs have consented to having the Named Plaintiffs make all decisions in this Lawsuit, including the terms of settlement and the release of claims, and that Named Plaintiffs, therefore have authority to waive the appellate rights of the Opt-In Plaintiffs as a term of this Agreement. In the event any Opt-In Plaintiff objects to the waiver of appellate rights or any other condition of the Agreement, they will be advised that they may choose to opt out of the settlement and out of the lawsuit, and if they choose not to opt out, they will be bound by all terms of the Agreement, including the waiver of appellate rights.

4.      Defendants make this Agreement to avoid the cost of defending against the Plaintiffs' FLSA and wage and hour claims as set forth in the Lawsuit. By making this Agreement, Defendants do not admit they or any Releasee violated any federal, state, or local law, rule, regulation, or ordinance; that any action taken with respect to Plaintiffs was wrongful or unlawful; or that Defendants or any Releasee breached any of their policies or procedures. This Agreement shall not be construed as an admission Defendants or any Releasee misclassified Plaintiffs or any other person as exempt from overtime or otherwise acted wrongfully with respect to Plaintiffs or any other person, but shall be construed strictly as an instrument to avoid litigation of Plaintiffs' FLSA and other wage and hour claims. This Agreement is not admissible to prove liability for or the validity of any claims that relate, refer, or pertain to the subject matter of this Agreement, or otherwise in any action or proceeding except to enforce the terms of this Agreement or as a defense to any claim.

5.      Collective Counsel have thoroughly investigated the facts of the Lawsuit and have diligently pursued investigation and prosecution of Plaintiffs' claims against Defendants. Based on their own independent investigation and evaluation, Collective Counsel believe the settlement with Defendants for the consideration and on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interest of Plaintiffs given all known facts and circumstances.

6.      Subject to Court approval of the Agreement, and as set forth in this Agreement, Defendants will pay and promise as follows:

(a)      Defendants will pay the Collective Settlement Fund of $6,000,000.00 into the QSF administered by the Settlement Administrator.

(b)      A service payment of up to $10,000 of the Collective Settlement Fund will be made to Named Plaintiff White. Subject to Court approval, a service payment of up to $10,000 of the Collective Settlement Fund will be made to Named Plaintiff Kessler. All service payments will be paid by the Settlement Administrator out of the QSF.

(c)     The Minimum Payments of $150 out of the Collective Settlement Fund will be made to each Plaintiff identified in ECF No. 349-16 at ¶¶ 8 and 9 who did not work any workweeks within the Three-Year Limitations Period as exempt-classified Store Managers.  The Minimum Payments will be paid by the Settlement Administrator out of the QSF. Fifty percent (50%) of each Minimum Payment will be deemed wages and will be subject to normal payroll tax withholding and W-2 reporting.  Fifty percent (50%) of each Minimum Payment will be deemed liquidated damages, and the Settlement Administrator will issue IRS Form 1099 MISC regarding each Plaintiff's liquidated damages payment.

7.     **Net Settlement Fund.**  Subject to Court approval of the Agreement, and on the terms set forth in this Agreement, the Net Settlement Fund will be distributed as follows:

(a)     Defendants, through the Settlement Administrator and from the QSF, will pay a Settlement Payment to each Plaintiff who does not opt out of the settlement. Net Settlement Fund will be divided between all Plaintiffs who performed work during the Three-Year Limitations Period on a prorated basis.  The Settlement Administrator will divide the Net Settlement Fund by the total number of workweeks that all Plaintiffs worked during the Three-Year Limitations Period. The Settlement Administrator will multiply this per workweek amount by the total number of workweeks that each Plaintiff worked during the Three-Year Limitations Period to arrive at an estimated Settlement Payment for each Plaintiff who performed work during the Three-Year Limitations Period.

(b)     Fifty percent (50%) of each Settlement Payment paid to each Plaintiff will be deemed wages and will be subject to normal payroll tax withholding and W-2 reporting.

(c)     Fifty percent (50%) of each Settlement Payment paid to each Plaintiff will be deemed liquidated damages, and the Settlement Administrator will issue IRS Form 1099 MISC regarding each Plaintiff's liquidated damages payment.

(d)     Defendants shall be responsible for all employer-paid taxes on the wage portions of the Settlement Payments, including FICA, FUTA and state unemployment, but shall not be liable for any other taxes associated with the Settlement Payment or the Settlement Payments. These employer-paid taxes shall be paid in addition to the Collective Settlement Fund.

(e)     The Settlement Administrator shall issue all necessary tax forms related to the Settlement Payments to Plaintiffs.

(f)     After distribution of the Settlement Payments, amounts allocable to checks that are not cashed after 120 days shall be reissued  through a second mailing of the same check amounts, and those re-issued checks shall remain valid for an additional 90 days. Any funds remaining after the void date of the second distribution shall be sent to the unclaimed funds department of the State in which the Plaintiff worked for Defendants.

8.     **Mutual Full Cooperation.** The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may be reasonably necessary to implement the terms of this Agreement. The Parties shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise,

to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Collective Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement and to obtain a final order or stipulation of dismissal of the FLSA and other wage and hour claims from the White Lawsuit and the Kessler Lawsuit upon completion of the terms and conditions of the Agreement as approved by the Court.

9.      **Duties Of The Parties Prior To Court Approval.**  Plaintiffs shall file an Unopposed Motion for Approval of Settlement. In that Motion, Plaintiffs will request that the Court approve the settlement as final, fair, reasonable, adequate, and binding on all Plaintiffs.

10.     **Duties of the Parties Following Approval.**

(a)     Within twenty (20) days of the Court's Approval Order, Defendants shall provide the Settlement Administrator with a list containing each Plaintiff's name, last-known address, social security number and the number of workweeks worked in the Three-Year Limitations Period.  The Defendants shall also provide the Settlement Administrator with a list containing each Plaintiff who will receive a Minimum Payment including his/her name, last known address,  social security number, and dates of employment.

(b)     The Parties will have equal access to the Settlement Administrator and all information related to the administration of the settlement. The Settlement Administrator will provide regular reports to the Parties regarding the status of the settlement administration process and distribution of the Settlement Checks to the Plaintiffs.

11.     **Settlement Administration.**

(a)     Rust Consulting has been selected as the Settlement Administrator. All settlement administration costs and fees for the Settlement Administrator shall be paid out of the Collective Counsel's Attorneys' Fees and Costs portion of this Settlement Agreement and Release.

(b)     Defendants will not be obligated at any stage to engage investigative services to locate Plaintiffs.  The Settlement Administrator shall update Plaintiffs' last-known mailing address through the National Change of Address program certified by the United States Postal Service.

(c)     The Settlement Administrator shall be responsible for, in addition to any obligations stated herein or otherwise mutually agreed to by the Parties: establishing and maintaining a QSF; paying from the QSF the amount of attorneys' fees, costs and expenses awarded to Collective Counsel; distributing any Court-approved Service Payments to Named Plaintiffs White and Kessler from the QSF; calculating the Settlement Payments allocated to each Plaintiff based on the criteria set forth in this Agreement; sending all counsel such calculations, disbursing payment of appropriate taxes to be paid under the settlement from the QSF (including the employer taxes due from Defendants in addition to the Collective Settlement Fund); complying with all applicable tax reporting obligations including issuing 1099s and W-2s to Plaintiffs; preparing and filing all applicable tax forms and amendments or modifications required thereto; distribution of the Notice and Settlement Checks to the Plaintiffs; sending a reminder postcard notice to Plaintiffs sixty (60) days after the initial Notice mailing reminding such Plaintiffs who have not yet cashed their checks of the deadline by which to do so; compiling copies of tendered

8

Settlement Checks and providing those copies to Defendants; notifying Defendants' Counsel of any Plaintiffs who have not cashed their Settlement Checks within the Check Cashing Period, as defined above; facilitating the delivery of funds associated with uncashed settlement checks to the unclaimed funds department of the particular state in which the Plaintiff worked for Defendants, ; preparing a declaration regarding its due diligence in the claims administration process, and insuring against any errors, omissions, or mistakes which may occur during administration.

(d)      All disputes relating to the Settlement Administrator's performance of its duties, after good faith efforts by the Parties to first resolve such disputes, will be referred to the Court, if necessary, which will have continuing jurisdiction over this Agreement until all payments and obligations contemplated by this Agreement have been fully carried out and thereafter to enforce the releases contained herein.

12.    **Claims—Binding Effect.**  Named Plaintiffs White and Kessler and all Opt-In Plaintiffs who do not opt out will be bound by the Court's Approval Order, the stipulation or Court's order dismissing their FLSA claims and other wage and hour claims with prejudice, and the releases set forth in this Agreement.

13.    **Plaintiffs' Releases.**  Named Plaintiffs White and Kessler and each Opt-In Plaintiff who receives a Settlement Check and does not opt out fully releases and discharges Defendants and Releasees, for the period of time they worked as exempt-classified Store Managers through the Effective Date or sixty days following the Court's order granting the motion for approval, whichever date is sooner,  from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, costs and expenses, damages, actions or causes of action of whatever kind or nature, whether known or unknown, expressly limited to wage and hour claims under the federal Fair Labor Standards Act and any other state, local or federal law, including, but not limited to, claims for alleged unpaid regular, minimum or overtime wages, alleged off-the-clock work, payment for all hours worked, miscalculation of wages, unreimbursed business expenses, "One-In-Seven" laws, and any damages, liquidated damages, penalties, interest, fees or costs derivative from those wage and hour claims available under any federal, state, or local law, that were or could have been alleged in the Lawsuit or that reasonably arise out of the acts alleged in the Lawsuit. This release includes all claims for unpaid wages as alleged in the Complaints filed in the White Lawsuit and the Kessler Lawsuit, including but not limited to claims for alleged off-the-clock work and claims for alleged failure to pay minimum wage or overtime, under any federal, state or local minimum wage statutes or laws, wage payment and collection statutes or laws, wage theft statutes or laws, overtime statutes or laws, federal, state or local common law and equitable claims, and pursuant to wage contract claims and applies to the period of time Plaintiffs worked as exempt-classified Store Managers. Named Plaintiffs White and Kessler and Opt-In Plaintiffs do not by this release waive any claim related to workers' compensation, unemployment compensation or discrimination law, or any claims that cannot be released by law.

As of the Effective Date, Named Plaintiffs White and Kessler and each Opt-In Plaintiff shall have released all claims as defined in this Section, even if any Named Plaintiff or Opt-In Plaintiffs do not cash a Settlement Check, except for any Opt-In Plaintiff who notifies the Court, prior to entry

of the Court's Approval Order, that they wish to withdraw from this Lawsuit and from this Settlement Agreement.

14.    **Distribution of Settlement Payments to Plaintiffs.**

(a)    The QSF shall be funded by Defendants as follows:

(i)    The Settlement Administrator will establish a "Qualified Settlement Fund" (QSF) as described in the Internal Revenue Code of 1986, as amended, within five business days after the Effective Date and will provide Defendants the QSF transfer information. The Settlement Administrator shall serve as Trustee of the QSF and shall act as a fiduciary with respect to the handling, management, and distribution of the QSF, including the handling of tax-related issues and payments.

(ii)    Within ten (10) business days of the Effective Date, Defendants shall wire transfer to the Settlement Administrator the Collective Settlement Fund and Collective Counsel's Attorneys' Fees and Costs. Defendants shall wire transfer to the Settlement Administrator any funds required to cover the employer payroll taxes associated with wage payments made to Plaintiffs within ten (10) business days of the Effective Date.

(iii)    The Settlement Administrator shall disperse the attorneys' fees, costs, and expenses payment and the Service Payment as provided for by the Court, along with costs of administration to itself, from the QSF. Within five (5) business days after the Settlement Administrator receives Defendants' payment pursuant to this provision, it shall pay to Collective Counsel via wire transfer or otherwise the total amount of attorneys' fees, costs and expenses approved by the Court and shall pay Named Plaintiffs White and Kessler any Service Payment approved by the Court. Collective Counsel shall provide the Settlement Administrator fully completed IRS Form W-9s for Collective Counsel and Named Plaintiffs.

(iv)    Defendants' payment to Collective Counsel of attorneys' fees and costs, is in full and complete satisfaction of all claims by Plaintiffs and Collective Counsel for attorneys' fees and costs.  Defendants and Collective Counsel separately negotiated this amount pursuant to 29 U.S.C. § 216(b) to resolve Collective Counsel's attorneys' fees and costs incurred in the litigation of the Kessler and White matters.  Defendants and Defendants' Counsel will not oppose such a request. Without limiting the generality of the foregoing, any dispute regarding the amount of attorneys' fees, costs or expenses, and/or any appeal related thereto, shall not affect or delay the finality of this Agreement as to the Plaintiffs, and shall not affect or delay the entry of judgment on Plaintiffs' FLSA and wage and hour claims in the Lawsuit. Collective Counsel shall provide the Settlement Administrator with instructions with respect to how much of this payment for attorneys' fees and costs should be paid to each law firm.

(iv)    Within fifteen (15) days after the Effective Date or as soon thereafter as practical, the Settlement Administrator shall mail the Settlement Checks to all Plaintiffs, with instructions explaining the scope of the Proposed Settlement Agreement's release of claims and providing that the Plaintiffs' cashing or depositing of the settlement check shall constitute their acceptance of and agreement to be bound by that Agreement's terms, including specifically the full release of all wage and hour claims during the period  they worked as exempt-classified Store

Managers, including but not limited to claims under the FLSA, state and local law pertaining to the payment of all hours worked and claims for unpaid wages (including overtime compensation) and related claims for liquidated damages, interests, penalties, fees and costs  that were asserted or could have been asserted in this litigation based upon the facts alleged in Plaintiffs' operative pleadings through the date of the Court's approval of the settlement.

(b)     Plaintiffs shall have one hundred twenty (120) days from the date the Settlement Administrator mails the Settlement Checks to cash their settlement checks.   After distribution of the Settlement Payments, amounts allocable to checks that are not cashed after 120 days shall be reissued through a second mailing of the same check amounts, and those re-issued checks shall remain valid for an additional 90 days. Any funds remaining after the void date of the second distribution shall revert to the unclaimed funds department of the particular state in which the Plaintiff worked for Defendants.

(c)     The Settlement Payments and Named Plaintiff's Service Payments will not create any credit or otherwise affect the calculation of benefits provided under any benefit or compensation plan or program provided by the Defendants or any Releasee (such as 401(k), pension, bonus, severance, or deferred compensation plans), and no payment made pursuant to this Agreement will be compensation for purposes of such plans/programs, require any contribution or award under such plans/programs, or otherwise require or modify coverage, contributions, or benefits under such plans/programs. By not opting out, Plaintiffs agree they have waived all such benefit, compensation plan, or program claims that could arise because of the Settlement Payments or the Service Payment, whether known or unknown by them, as part of their releases of claims under this Agreement.

15.    **Potential Voiding of the Settlement Agreement.**

(a)     If the Court does not approve the settlement terms set forth in this Agreement, or conditions approval on a material change to such terms, this entire Agreement shall be rendered voidable and unenforceable, and the Parties shall resume litigating the Lawsuit unless the Parties jointly agree to another course of action. If the Court does not approve certain settlement terms, the Parties agree to attempt to negotiate in good faith and address any issues raised by the Court. If the Parties are not able to resolve the issues between the Parties, the Parties shall engage a mediator to assist them in their efforts.

(b)     If, after a notice of appeal, a petition for writ of certiorari, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Approval Order such that there is a material modification to the settlement terms outlined in this Agreement, and the reviewing court's decision is not completely reversed and the Approval Order is not fully affirmed on review by a higher court, this entire Agreement shall be rendered voidable and unenforceable, and the Parties shall move the Court to return both matters to their pre-settlement postures unless the Parties jointly agree to another course of action.

(c)     If this Agreement becomes void and unenforceable, the Parties reserve all rights, claims, and defenses in the Lawsuit.   Additionally, if this Agreement becomes void and unenforceable, all negotiations, statements, and proceedings related thereto shall be without prejudice to the rights of any Party, all of whom shall be restored to their respective positions in

the Lawsuit prior to the settlement; and neither this Agreement, its ancillary documents, actions or filings the Parties agreed to, or any statements made in connection with the negotiation of the settlement, shall be admissible or offered into evidence in the lawsuit or any other action for any purpose.

16.     **Parties' Authority:**  The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto to the terms and conditions hereof.

17.     **Enforcement Actions.**

(a)     This Agreement is fully enforceable in the United States District Court for Northern District of Indiana which shall retain jurisdiction to enforce this Agreement. However, before either Party seeks resolution of any dispute related to the enforcement of this Agreement with the Court, they shall make good faith efforts to resolve such dispute informally with the other Party.

(b)     This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Iowa, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(c)     This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit. This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs White and Kessler, Opt-In Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

18.     **Notices.** Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder by the Parties to this Agreement shall be in writing and shall be addressed as follows:

> To Plaintiffs:
> Gregg I. Shavitz
> SHAVITZ LAW GROUP, P.A.
> 622 Banyan Trail, Suite 200
> Boca Raton, Florida 33431
> Telephone: (561) 447-8888
> Facsimile: (561) 447-8831
> E-mail: gshavitz@shavitzlaw.com
>
> Marc S. Hepworth
> HEPWORTH, GERSHBAUM & ROTH, PLLC
> 192 Lexington Avenue, Suite 802
> New York, New York 10016
> Telephone: (212) 545-1199
> Facsimile: (212) 532-3801
> E-mail: mhepworth@hgrlawyers.com

To Defendants:
John Lassetter
Littler Mendelson, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
jlassetter@littler.com

19.    **No Other Promises.** Named Plaintiffs represent that neither Defendants nor any of their agents, representatives, or attorneys made any representations concerning the terms or the effects of this Agreement other than those contained herein and that their decision to sign this Agreement is not based in whole or in part on any statement or promise that does not appear within the four corners of this document.

20.    **Construction.** The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, extensive, arm's length negotiations between the Parties and that the Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of this Agreement.

21.    **Captions and Interpretations.** Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

22.    **Modification.** This Agreement may not be changed, altered, or modified except in writing and signed by the Parties hereto, and approved by the Court, except that the Parties may mutually agree to reasonable extensions of time that do not affect any effective dates. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

23.    **Integration Clause.** This Agreement constitutes the entire agreement between the Parties relating to the subject matter contained herein, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, agreed to by the Parties in this matter, are merged herein. No rights conferred by this Agreement may be waived except in writing.

24.    **No Prior Assignments.** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any

13

portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

25.     **Signatories.** It is agreed that because the Opt-In Plaintiffs are so numerous, it is impossible or impractical and not required to have each Opt-In Plaintiff execute this Agreement.

26.     **Counterparts:**  This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.  Signatures sent by facsimile machine, scanned signatures in Portable Document Format sent by email, or by electronic signature through DocuSign and/or Right Signature shall be deemed original signatures.

In witness whereof, the Parties have executed this Agreement as of the date set forth below.

Executed this __21__ day of ___April_____, 2026

_Nancy A. White_

_____
Nancy White


Executed this _____ day of _____, 2026


_____
Summer Kessler


Executed this _____ day of _____, 2026

By:    _____
Steve Bramlage
Chief Financial Officer
On behalf of Casey's General Stores, Inc., Casey's
Marketing Company, and Casey's Retail Company

15

In witness whereof, the Parties have executed this Agreement as of the date set forth below.

Executed this _____ day of _____, 2026

_____
Nancy White

Executed this 21 day of April_____, 2026

*Summer Kessler*
_____
Summer Kessler

Executed this _____ day of _____, 2026

By: _____
Steve Bramlage
Chief Financial Officer
On behalf of Casey's General Stores, Inc., Casey's
Marketing Company, and Casey's Retail Company

15

In witness whereof, the Parties have executed this Agreement as of the date set forth below.

Executed this _____ day of _____, 2026

_____
Nancy White

Executed this _____ day of _____, 2026

_____
Summer Kessler

Executed this 21.00 day of _____April_____, 2026

By: _____
Steve Bramlage
Chief Financial Officer
On behalf of Casey's General Stores, Inc., Casey's
Marketing Company, and Casey's Retail Company

15