**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| NANCY WHITE, on behalf of herself and all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No.: 2:18-cv-00072-DRL |
| CASEY'S GENERAL STORES, INC., CASEY'S MARKETING COMPANY, and CASEY'S RETAIL COMPANY, | |
| Defendants. | |
| ----------------------------------------------------- | |
| SUMMER KESSLER, on behalf of herself and all others similarly situated, | |
| Plaintiffs, | Case No.: 2:26-cv-00045-DRL |
| v. | |
| CASEY'S GENERAL STORES, INC., CASEY'S MARKETING COMPANY, and CASEY'S RETAIL COMPANY, | |
| Defendants. | |

**DECLARATION OF MARC S. HEPWORTH, ESQ., IN SUPPORT OF
PLAINTIFFS' MOTION FOR SETTLEMENT APPROVAL**

1. I am a founding partner of Hepworth, Gershbaum & Roth, PLLC ("HGR"), located at 192 Lexington Avenue, Suite 802, New York, New York 10016. HGR is co-counsel with the Shavitz Law Group, P.A. ("SLG") and Cohen & Malad, LLP in this action.

2. I am submitting this declaration in support of the Plaintiffs' Motion for Settlement Approval. I have personal knowledge of the matters set forth herein and would so testify if called as a witness.

3.  HGR is a civil litigation firm dedicated to representing plaintiffs in class and collective action lawsuits, with a particular emphasis on prosecuting claims on behalf of workers against companies that violate the Fair Labor Standards Act ("FLSA"), state labor laws, and the Equal Pay Act. The firm has been at the forefront of wage and hour class and collective action litigation for many years, successfully litigating to conclusion FLSA, EPA, and state wage and hour collective and class actions that, to date, have recovered in excess of $100 million for workers across the country.

4.  I am an attorney admitted *pro hac vice* in this Court, and am also admitted to practice in the courts of the State of New York, including the Eastern District of New York and the Southern District of New York.

5.  I am a graduate of Benjamin N. Cardozo School of Law (J.D., 1998) and Binghamton University (B.A., 1993). I am a member of the New York State Trial Lawyers Association, the American Association of Justice, the National Employment Lawyers Association, the National Employment Lawyers Association/New York, the National Association of Consumer Advocates, the Association of the Bar of the City of New York, the Workers Injury Law & Advocacy Group, and the Federal Bar Council.

6.  I have been selected to *Super Lawyers* since 2014 in the area of Employment Law and have been recognized as a Top 100 Trial Lawyer by the National Trial Lawyers. I have lectured extensively, including on behalf of the Ohio Association of Justice on the topic of "Preparing For and Taking a 30(b)(6) Deposition in an FLSA Case," and have presented at Strafford Publications wage and hour webinars and in-person seminars on topics including asserting and challenging affirmative defenses and presentation of damages.

**<u>HGR ATTORNEYS WHO WORKED ON THIS MATTER</u>**

7. In addition to Mr. Hepworth, the following attorneys and professional staff from HGR worked on this matter. Their backgrounds are set forth below.

8. **Charles Gershbaum** is a founding partner of HGR. Mr. Gershbaum has been a civil litigator for over thirty-five years, spending the first decade of his practice in court on a daily basis, fighting for individual rights and litigating cases from inception through trial and appeal. He has represented thousands of plaintiffs fighting against corporations and some of the largest insurance companies and municipalities in New York, obtaining results through settlement or verdict in both state and federal venues. Mr. Gershbaum graduated from Yeshiva College in 1987 and received his law degree from the Benjamin N. Cardozo School of Law in 1990, where he was a member and editor of the Cardozo ILSA Journal of International Law. He is a member of the New York State Trial Lawyers Association, the American Association of Justice, the American Bar Association, and the New York State Bar Association, and has been selected by his peers as a *Super Lawyer*.

9. **David A. Roth** is a founding partner of HGR. Since 1991, Mr. Roth has been representing plaintiffs who have been injured, had their civil rights deprived, or had duly earned wages denied by their employers. Mr. Roth has prosecuted and tried numerous civil cases at the state, appellate, and federal levels in and around New York City. Notably in November of 2025, Mr. Roth was lead counsel on a file that resulted in a landmark verdict of $81.7 Million Dollars for a double amputee against the New York City Transit Authority. This landmark verdict was the first of its kind holding the NYC Transit Authority and MTA liable for their practices and procedures related to the negligent operation of the NYC subway system. Mr. Roth has been admitted to practice *pro hac vice* in California, Pennsylvania, New Jersey, Texas, Florida, Illinois, Delaware,

Massachusetts, Colorado, Indiana, Minnesota, Maine and Virginia. Mr. Roth has lectured more than 20 times for multiple state, federal and national bar associations.  Most recently in April of 2026 Mr. Roth lectured at the New York State Trial Lawyers' annual evidence lecture and is currently scheduled to lecture in May 2026 on topics related to ethics in trial practice.  Mr. Roth has also been published in the New York State Trial Lawyers' semi-annual publication. Mr. Roth was an officer of the New York State Trial Lawyers Association for more than fifteen years and has been selected by his peers as a *Super Lawyer* since 2013. He is currently a dean emeritus of NYSTLI, the New York State Trial Lawyers Institute, which is the continuing legal education extension of the New York State Trial Lawyers and participates in setting and directing the continuing legal education program and plans for all trial lawyers in New York State. Mr. Roth graduated from the State University of Buffalo in 1988 and received his law degree from Albany Law School in 1991.

10. **Rebecca S. Predovan** is a Senior Litigation Associate at HGR who has played a central role in the day-to-day management of this litigation since its inception.  For more than a decade and a half Ms. Predovan has litigated employment and FLSA cases on behalf of Plaintiffs and has appeared in Federal courts throughout the United States on behalf of plaintiffs in both class and collective actions. Ms. Predovan is a 2009 graduate of Albany Law School where she served as Symposium Editor for the Journal of Science and Technology. Ms. Predovan is admitted to the U.S. District Court for the Southern District of New York, and the Eastern District of New York as well as this Court *pro hac vice*.  Ms. Predovan has been directly involved in every phase of this matter, including pre-filing investigation, drafting and filing pleadings, discovery, negotiation of an ESI protocol, depositions, motion practice, mediation, and settlement. Ms. Predovan has

particular expertise in FLSA collective action practice, client management, and the handling of large opt-in plaintiff collective actions.

11. **Janine Kapp**, a graduate of Hofstra Law School, is an attorney duly admitted to practice law in 2016. Ms. Kapp worked for HGR on numerous FLSA cases.

12. **Amy Goldreyer** is a paralegal at HGR who has provided substantial support throughout the duration of this litigation, including opt-in retainer processing, client communications, document organization, and coordination.

13. **Andrew Hepworth** is a paralegal at HGR who has provided substantial support throughout the duration of this litigation, including extensive client communications, and document productions.

## HGR'S EXPERIENCE IN FLSA COLLECTIVE AND CLASS ACTION LITIGATION

14. HGR has extensive experience in litigating class and collective actions. The firm has been designated as class counsel or co-class counsel in many cases, including these recent matters:

> *Youngblood v. Family Dollar, 1:09-cv-03176 (S.D.N.Y.)* (co-counsel in a store manager misclassification case; Rule 23 case certified; settled for $14,000,000.00);
> *Roberts et al v. The TJX Companies Inc., 1:13-cv-13142-ADB (D. Mass.)* (co-lead counsel on wage and hour collective and class action; settled for $31,500,000.00);
> Burns v. The TJX Companies, Inc. (D. Mass.) (co-lead counsel on wage and hour collective and class action; settled for $4,750,000.00);
> *Fermin v. Rite Aid of New York, Inc., 1:08-cv-11364 (S.D.N.Y.)* (co-lead counsel on a wage and hour misclassification matter; settled as part of Craig v. Rite Aid, 4:08-cv-02317 (S.D.N.Y.) for $20,900,000.00);
> *Cunningham v. EDS, 1:06-cv-5260 (S.D.N.Y.)* (co-lead counsel on a misclassification case certified under FLSA § 216(b) as a collective action; settled for $11,800,000.00);
> *Lapan v. Dick's Sporting Goods, Inc., 1:13-cv-11390 (D. Mass.)* (co-lead counsel on a misclassification case certified under FLSA § 216(b) as a collective action and Rule 23 class action; settled for $10,000,000.00);
> *Costello, et al. v. Kohl's Illinois Inc., et al., 1:13-cv-1359 (S.D.N.Y.)* (lead counsel on a wage and hour misclassification case certified under FLSA § 216(b) as a collective action; settled for $4,000,000.00);

*McKee v. Petsmart, Inc., 1:12-cv-01117 (D. Del.)* (co-lead counsel on a wage and hour misclassification collective action; settled for $3,800,000.00);
*Fischer, et al. v. Kmart Corp., 3:13-cv-04116 (D.N.J.)* (co-lead counsel on a misclassification case certified under FLSA § 216(b) and Rule 23; settled for $3,814,000.00);
*Hallen v. Belk, Inc., 4:16-cv-00055 (E.D. Tex.)* (co-lead counsel on a wage and hour misclassification collective action; settled for $2,900,000.00);
*Martinez De Rodriguez v. All Care Home Health Services, LLC, No. 509728/2016 (N.Y. Sup. Ct., Kings Cnty.)* (settled for $2,400,000.00);
*Cambridge v. Sheetz, Inc., No. 1:17-CV-1649 (M.D. Pa.)* (certified under FLSA § 216(b) as a collective action; settled for $1,800,000.00);
*Gervasio et al. v. Wawa, Inc., No. 3:17-CV-00245* (lead counsel on a wage and hour misclassification collective action; settled for $1,400,000.00);
*Stoddard v. Love's Travel Stops & Country Stores, Inc., 5:21-cv-308-F (W.D. Okla.)* (co-lead counsel on a misclassification collective action against a national operator of travel stops; settled for $2,950,000.00);

15. HGR's fee applications have been granted in numerous wage and hour matters. *See, e.g., De Block v. Speedway LLC*, 2:20-cv-00824-GAM (E.D. Pa. June 10, 2022); *Roberts v. The TJX Co.*, 1:13-cv-13142-ADB (D. Mass. Jan. 5, 2021); *Hallen v. Belk, Inc.*, 4:16-cv-00055, ECF No. 177 (E.D. Tex. Dec. 20, 2018) (noting that Plaintiffs' counsel are "experienced labor and employment attorneys, who are well versed in litigating complex FLSA collective actions, in a particularly contentious matter"); *Youngblood v. Family Dollar*, 1:09-cv-03176, ECF No. 162 (S.D.N.Y. June 7, 2016) (finding counsel qualified and experienced in similar misclassification case); *Costello, et al. v. Kohl's Illinois Inc.*, 1:13-cv-1359, ECF No. 185 (S.D.N.Y. Jan. 6, 2016) (finding HGR as class counsel qualified and experienced and awarding 33-1/3% as attorneys' fees).

## WORK PERFORMED BY HGR IN WHITE (F/K/A MCCOLLEY)

16. This case took eight (8) years to resolve and involved complex ESI conferrals, numerous discovery disputes, and active engagement with Magistrate Judge Martin. Document production was more than substantial, totaling over 71,963 unique files containing at least 561,329 bates-

stamped pages. In addition to the Bates stamped documents, Casey's produced approximately 12 terabytes of native Casey's Connection materials. This case was hard-fought, the Defense counsel are skilled attorneys and Plaintiffs' counsel operated at a sophisticated and very high level of practice.  Plaintiffs are pleased to submit the instant resolution for the Court's approval.

17. HGR first became involved in early 2018 when it was engaged as co-counsel to prosecute claims on behalf of Casey's Store Managers ("SMs") who were misclassified as exempt from overtime under the FLSA. HGR undertook this case on a contingency fee basis, bearing the full risk of non-payment for significant time expended, and knowing that costs and expenses might not be recovered at all and if recovered, it would not until the litigation was successfully resolved, HGR did this for eight (8) years. As detailed below, my firm has been involved in every material aspect of this litigation since its inception.

18. Casey's operates approximately 2,100 convenience stores in 16 states and classified all SMs as exempt from federal overtime requirements. The core theory of the case was that SMs' primary duties were non-managerial in nature — including stocking shelves, running cash registers, preparing food, cleaning, and performing manual labor — notwithstanding their "Store Manager" title. The case settled in January 2026 after eight (8) years of active litigation, with a total of 1,916 individuals having joined the collective (1,508 of whom were determined to have timely claims).

19. In early 2018, HGR assisted in the pre-filing investigation of Casey's corporate structure, store manager compensation and classification practices, and potential FLSA violations. This included analysis of Casey's 10-K SEC filings, identification and outreach to potential plaintiffs across multiple states. The collective action complaint was filed on February 16, 2018.

20. HGR prepared Pro Hac Vice applications for HGR attorneys.

21. HGR reviewed and analyzed Casey's Answer to Amended Complaint filed in May 2018, which included Casey's admissions that it classifies all Store Managers as exempt from federal overtime requirements. This review identified key admissions for use in conditional certification and summary judgment briefing.

22. HGR coordinated the preparation, review, and execution of opt-in declarations from collective members, including coordinating signature pages and ensuring proper documentation. These declarations provided critical evidentiary support for conditional certification.

23. HGR prepared and sent email updates to opt-in plaintiffs and collective members throughout the litigation to keep them informed of case developments, key deadlines, and settlement progress.

24. HGR managed retainer agreements (obtaining over 1,000 individual retainers so as to deal with the possibility of decertification) and updates with opt-in plaintiffs, including execution of initial retainer agreements and updates to retainer terms as needed throughout the eight (8) year litigation.

25. In mid-2018, HGR played a material and substantive role in briefing the motion to bifurcate discovery, which was granted on July 12, 2018, establishing a first phase focused on conditional certification issues including Rule 30(b)(6) depositions of Casey's corporate representatives. HGR also assisted with protective order submissions, including the claw back order and the motions to seal confidential exhibits filed in the fall of 2018.

26. In the fall of 2018, HGR played a material and substantive role in the preparations for the first-phase depositions of Casey's corporate representatives — including witnesses Robert Ford and Cindi Summers. These Rule 30(b)(6) depositions were critical to the conditional certification motion, establishing Casey's top-down management structure and the uniform, nationwide policy

of classifying all SMs as exempt. HGR also prepared and defended the Named Plaintiff's deposition and those of early opt-in plaintiffs Melinda Korte and Vivian Piehl.

27. Following the close of first-phase discovery, HGR played a significant role in assisting co-counsel in preparing the motion for conditional certification filed on November 16, 2018. HGR conducted legal research, assisted in preparing the briefs, declarations, and exhibits, reviewed deposition transcripts to support the motion, and analyzed Casey's document production. After Defendants opposed the motion, HGR reviewed the opposition and assisted with the reply brief filed on January 8, 2019.

28. HGR played a material and substantive role in the two rounds of equitable tolling motions in 2020 and 2022, conducting legal research and preparing briefing including opening briefs and replies, to protect the statute of limitations of putative collective members during the extended pendency of the certification motion.

29. HGR participated in the hearing on Plaintiffs' motion for conditional certification on March 9, 2021, and prepared for oral argument. On March 31, 2021, the Court granted conditional certification. HGR thereafter assisted in the negotiation of the form and scope of the notice to be issued to collective members, including appearing at the hearing on June 15, 2021, to address disputes.

30. Following conditional certification, HGR maintained and updated comprehensive opt-in tracking spreadsheets throughout the life of the case, conducted a state-by-state callback campaign for representative opt-ins, and sent individualized contact letters to opt-in plaintiffs regarding case status and the proposed settlement.

31. HGR identified opt-in plaintiffs whose claims were potentially time-barred and drafted and mailed notification letters to those individuals regarding statute of limitations issues.

32. HGR conducted systematic address updates and contact verification for opt-in plaintiffs throughout the litigation.

33. In January 2023, the parties commenced second-stage discovery under a Stipulated Representative Discovery Plan, with which HGR assisted in the negotiation and preparation. HGR assisted in preparing discovery requests served on Defendants, as well as individual opt-in discovery responses, interrogatory responses, request for production of document responses, and request for admission responses for representative opt-in plaintiffs. This required gathering information from individual plaintiffs, coordinating document collection from their devices, and ensuring all responsive materials were produced. HGR also prepared individualized responses for opt-in plaintiffs in the consolidated *Kessler* matter.

34. HGR conducted legal research on representative testimony standards and trial plans for FLSA collective actions, compiling case law authorities including trial plan precedents to support class certification and trial preparation.

35. Defendants' document production was substantial, totaling over 71,963 files, which contained at least 561,329 bates stamped pages (these files do not include the approximately 12 terabytes of native Casey's Connection materials that Casey's produced), including several installments of pay and time records, Store Manager job descriptions, policy manuals, Casey's Connect task assignments, store-level checklists, photographs of completed work, personnel files, and corporate communications. HGR spent significant time reviewing this production to confirm sufficiency, identify documents for use in depositions, motions, and damages analysis, and to assess liability and certification issues.

36. HGR was involved in complex ESI negotiations and discovery disputes that characterized the later stages of this litigation. These disputes involved numerous conferrals and disagreements

with the Defendants on topics including but not limited to the number of custodians whose ESI must be searched, the temporal scope of those searches, and store-level email access by co-employees. HGR conducted multiple meet-and-confer sessions with defense counsel, prepared detailed strategy memoranda in advance of those sessions, analyzed the judge's rulings and fallback positions, briefed and filed a motion to compel in November of 2024 and assisted in briefing a renewed motion to compel ESI filed in March 2025. That motion was granted, with the court *sua sponte* granting fee for same. In conjunction with this motion practice, HGR drafted several joint status reports and attended several status conferences before Magistrate Judge Martin keeping the Court comprised of discovery developments, disputes, and conferral efforts.

37. HGR reviewed Defendants' privilege log and conferred with defense counsel regarding documents that Plaintiffs believed should not be withheld. For these conferrals, HGR researched good faith and privilege waiver issues, including in connection with Casey's assertion of an advice-of-counsel defense.

38. HGR participated in depositions of multiple witnesses during the second phase of discovery, including Tim Ahrendsen, Beverly Bailey, Judy Beatty, Tabetha Ciechna, and Anthony Hawks. Preparation for these depositions was substantial given the large ESI and email production, and required compilation of exhibit sets, up-the-chain supervisor lists, analysis of Casey's pay data spreadsheets, and background research on deponents. Depositions of Casey's supervisors and designees helped identify e-mail communications and other documents showing Casey's corporate control over store operations contradicting the declarations submitted by Defendants' witnesses.

39. HGR prepared and served third-party subpoenas to obtain documents and information relevant to the liability case, including a subpoena to Service Management Group. HGR coordinated with third-party counsel and managed the subpoena enforcement process.

40. HGR worked closely with co-counsel and Plaintiffs' expert, David M. Breshears, CPA/CFF, to analyze pay and time records and develop multiple damages scenarios reflecting different overtime calculation methods (including 0.5 OT, 1.5 OT, and fluctuating workweek), and opt-in date analyses. This expert work was critical to assessing potential damages and preparing for trial.

41. HGR reviewed Defendants' motion for summary judgment, which was filed in December 2025. HGR materially assisted with preparation of the response papers.

42. HGR assisted in preparing a response to Defendants' motion seeking to communicate with opt-in plaintiffs, conducting legal research on *ex parte* communications and drafting briefing to protect collective members from improper defense contact.

43. HGR assisted in preparing motions to extend discovery deadlines as needed throughout the litigation to accommodate the complexity of the case and the volume of discovery.

44. HGR conducted legal research on requests for admission practice and authorities supporting motions to compel responses to requests for admission.

45. HGR updated its corporate analysis of Casey's operations in 2025, including review of Casey's 10-K filing and compilation of store location data across all 16 states in which Casey's operates, to support settlement negotiations and damages calculations.

46. HGR also participated in designing, distributing, and analyzing surveys of opt-in plaintiffs and store managers. These surveys generated over 1,200 files of data provided important factual support for Plaintiffs' liability and damages positions. HGR also prepared and submitted FOIA/FOIL requests to government agencies, drafted and filed multiple joint status reports through multiple rounds of tracked-changes negotiation with defense counsel, and managed the

motion to substitute the named plaintiff following the death of Joy McColley, which was granted on January 16, 2025.

47. HGR developed and implemented a methodology for random selection of representative opt-in plaintiffs for discovery purposes, including creation of random selection data files to ensure fair and defensible selection of representative plaintiffs for discovery responses.

48. HGR conducted legal research and prepared materials for potential appellate litigation regarding the Court's equitable tolling ruling, including analysis of appellate standards and preservation of issues for appeal.

49. In addition to the above tasks, HGR participated in numerous status conferences and hearings throughout the duration of this eight (8) year litigation, had many conferrals with defense counsel regarding discovery and other issues, and kept collective members informed of case developments throughout.

50. HGR prepared detailed documentation of meet-and-confer sessions with defense counsel, including extensive transcribed notes of discussions regarding discovery disputes, ESI issues, and case management matters.

### OVERVIEW OF HGR'S WORK IN THE *KESSLER* MATTER

51. During late 2022, HGR assisted in drafting of the complaint *Kessler v. Casey's General Stores, Inc.*, No. 22-2971 (S.D. Ill.), to represent individuals who had not opted into the *McColley/White* litigation.

52. Defendants moved to dismiss the *Kessler action* on February 21, 2023. HGR researched the applicable law and helped draft the opposition. On August 4, 2023, the Court denied Defendants' motion.

53. HGR participated in the parties' initial conference and the preparation of a proposed case management plan. HGR also assisted in preparing a stipulation for conditional certification, which was submitted in October 2023 after Defendants agreed not to oppose the motion. HGR assisted in preparing the proposed notice and consent to join form for the *Kessler* collective.

54. In the *Kessler* matter, HGR materially assisted in preparing discovery requests served on Defendants and also prepared individual discovery responses, request for production of document responses, request for admissions responses, and interrogatory responses for Plaintiff Kessler and the opt-in plaintiffs selected to participate in representative discovery. This required gathering information directly from each individual, coordinating searches of their electronic devices, and ensuring complete and accurate production of all responsive materials. Defendants produced and HGR reviewed a sizable volume of documents in *Kessler* related to the discovery opt-ins.

55. When the parties agreed to a global settlement encompassing both *White* and *Kessler*, HGR assisted in preparing the motion to transfer *Kessler* to the Northern District of Indiana for settlement consolidation purposes.

56. HGR participated in multiple Court conferences during the pendency of this case.  HGR also advised *Kessler* opt-ins of status and addressed other Opt-in inquiries.

57. When the parties agreed to a settlement, HGR reviewed the motion to transfer this case to the Northern District of Indiana for settlement consolidation purposes.

### HGR'S ROLE IN SETTLEMENT NEGOTIATIONS

58. Two mediations took place during this litigation. The first was a full-day session in January 2022, presided over by Hunter Hughes, Esq. HGR assisted in preparing the mediation statements and the damages analyses, including a compilation of hours worked, and damages calculations

across multiple scenarios. Despite a full day of mediation and subsequent negotiations, the matter did not settle.

59. A second full-day mediation occurred in Chicago, Illinois during November 2025, with Anne Estevez, Esq. serving as mediator. HGR assisted in preparing the mediation statement and updated damages analysis, which incorporated the *Kessler* collective and reflected updated data from Casey's. HGR worked on the pre-mediation statement to the mediator (through multiple draft versions), prepared "days-worked-in-a-row" analysis, and selected exhibits to be used at the mediation. Following the mediation, the parties continued negotiations, which ultimately led to the settlement now before the Court.

60. HGR assisted with the settlement term sheet and the settlement agreement and prepared the motion of settlement approval.  In doing so it conducted legal research concerning settlements approved in the Seventh Circuit.

61. HGR prepared the settlement approval motion and conducted legal research in support of the motion.

62. HGR and co-counsel consulted with the named Plaintiff in the *White* and *Kessler* action on multiple occasions.  Named Plaintiff Nancy White has been an active participant in the prosecution of this action. Ms. White consulted regularly with HGR and co-counsel regarding the facts underlying the claims and the legal theories advanced on behalf of the collective. Ms. White timely responded to written discovery requests propounded by Defendants, including interrogatories and requests for production of documents, and cooperated fully in the discovery process. Ms. White also actively participated in settlement discussions, including the private mediation session with Anne Marie Estevez, Esq. on November 12, 2025, and the subsequent negotiations that culminated in the Settlement now before the Court. Ms. White devoted substantial time and effort to this matter

and assumed significant personal and professional risk by agreeing to serve as Named Plaintiff in an action against her former employer for the benefit of collective members.

63. Named Plaintiff Summer Kessler has similarly provided substantial assistance throughout the prosecution of the Kessler action. Ms. Kessler consulted with HGR and co-counsel on numerous occasions regarding the facts and legal issues in the case, reviewed and approved pleadings filed on her behalf, timely responded to written discovery requests, including interrogatories and requests for production of documents, and produced responsive documents. Ms. Kessler also participated in settlement discussions that resulted in the Settlement now before the Court. Like Ms. White, Ms. Kessler assumed the risk and burden of serving as a Named Plaintiff in this action against her former employer, devoting her time and effort for the benefit of all collective members.

64. Based upon HGR's comprehensive knowledge of the facts and legal issues in this litigation, the extensive discovery and investigation conducted over eight years, and HGR's substantial experience in FLSA collective actions and wage and hour litigation, it is HGR's professional judgment that the Settlement is fair and reasonable and in the best interests of all Plaintiffs and Opt-In Plaintiffs. HGR reached this conclusion after careful evaluation of the strengths and weaknesses of Plaintiffs' claims, Defendants' defenses, the risks attendant to continued litigation through summary judgment, trial, and appeal, and the substantial and immediate monetary relief provided to the approximately 2,600 collective members under the Settlement.

## HGR'S ATTORNEYS' FEES AND COSTS

65. HGR accepted this matter on a contingency fee basis and has received no payment for fees or costs incurred.

66. HGR has incurred unreimbursed costs and expenses in the prosecution of this litigation totaling $114,620.01. A chart summarizing those costs is set forth below:

| Cost | Amount |
| --- | --- |
| Court Fees and Service of Process | $ 200.00 |
| Legal Research (Westlaw/Pacer) | $ 211.55 |
| Mediation Fees | $ 5,000.00 |
| Travel and Deposition Expenses | $ 7,428.21 |
| Expert Witness Fees (David M. Breshears, CPA/CFF) | $ 19,443.87 |
| Postage / Printing / Copying | $ 734.84 |
| Court Reporting Fees | $ 10,685.60 |
| ESI | $ 70,915.94 |
| TOTAL | $ 114,620.01 |

67. To date, HGR has received no reimbursement for these expenses.

68. Since 2018, HGR has spent 6,298.70 hours working on this matter. HGR's total lodestar for such work is $5,559,815.00.

69. The chart below contains a breakdown of hours worked by each HGR timekeeper, including their respective hourly rates:

| Name | Title | Hours | Hourly Rate | Total |
| --- | --- | --- | --- | --- |
| Marc S. Hepworth | Partner | 1,045.70 | $950 | $993,415.00 |
| Charles Gershbaum | Partner | 1,400.90 | $975 | $1,365,877.50 |
| David A. Roth | Partner | 1,244.00 | $1,175 | $1,461,700.00 |
| Rebecca Predovan | Senior Litigation Associate | 2,114.30 | $775 | $1,638,582.50 |
| Janine Kapp | Associate | 36.00 | $350 | $12,600.00 |
| Amy Goldreyer | Paralegal | 301.00 | $200 | $60,200.00 |
| Andrew Hepworth | Paralegal | 156.80 | $175 | $27,440.00 |

| Name | Title | Hours | Hourly Rate | Total |
|------|-------|-------|-------------|-------|
| TOTALS | | 6,298.70 | | $5,559,815.00 |

70. HGR's billing rates are consistent with rates regularly approved by courts in similar FLSA collective action matters. For example, in this matter *White v. Casey's General Stores, Inc.*, No. 2:18-cv-72 (N.D. Ind.) (Order ECF No. 326 at pp.3-4), Judge Martin found that that the rates sought in connection with Plaintiffs' motion to compel were "appropriate for employment attorneys in complex collective actions in Indiana and Illinois." *Id*. (approving billing rates for the following HGR attorneys: David Roth $1,100[1], Charles Gershbaum $925.00, Rebecca Predovan $725.00); *see also, Eulalia Martinez De Rodriguea, et al. v. All Care Home Health Services, LLC*, et al., 509728/2016 (Sup. Ct., Kings County June 23, 2020)(attached hereto as **Exhibit A** are relevant portions of the transcript)(approving settlement of 2.4 million and stating that the court would keep plaintiffs' motion for approval as a template);  *Hallen v. Belk, Inc.*, 4:16-cv-00055, ECF No. 177 (E.D. Tex. Dec. 20, 2018) (approving HGR's rates and finding counsel "experienced labor and employment attorneys, who are well versed in litigating complex FLSA collective actions, in a particularly contentious matter"); *Youngblood v. Family Dollar*, 1:09-cv-03176, ECF No. 162 (S.D.N.Y. June 7, 2016) (finding HGR counsel qualified and experienced); *Costello, et al. v. Kohl's Illinois Inc.*, 1:13-cv-1359, ECF No. 185 (S.D.N.Y. Jan. 6, 2016) (finding HGR as class counsel qualified and experienced, and awarding 33-1/3% as attorneys' fees).

---

[1] On September 25, 2024, the Hon. Arlene Roth, Supreme Court, State of New York, County of New York after oral testimony, found "Mr. Roth's hourly rate of a thousand dollars an hour "reasonable for an attorney with his experience and expertise" *Roth and Roth, LLP, v Long Is. R.R,*, (NY County, Index 158366/2022) (Attached hereto as **Exhibit B**, are the relevant portions of the transcript).

71. The time records and expenses incurred in the prosecution of this case are reflected in the books and records of the firm, which are available for submission to the Court *in camera* upon request. These books and records are prepared from records, expense vouchers, receipts, and check records, and are accurate as to all expenses incurred. HGR and its co-counsel communicated regularly throughout this litigation to ensure there was no unnecessary duplication of effort.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: April 22, 2026                          s/*Marc S. Hepworth*
New York, New York                          Marc S. Hepworth, Esq.

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS – CIVIL TERM: PART: 52
- - - - - - - - - - - - - - - - - - - - - X
EULALIA MARTINEZ DE RODRIGUEA, and
GUILLERMINA GOMEZ DE GUZMAN, individually
and on behalf of all others situated,
                              Plaintiffs.

                                    IND. NO.
          -against-                 509728/16

ALL CARE HOME HEALTH SERVICES, LLC, AND
BENJAMIN NEUMAN,
                              Defendants.
- - - - - - - - - - - - - - - - - - - - - X
360 Adams Street/Skype Virtual
Brooklyn, New York 11201

June 23rd,  2020

B E F O R E:

                        FRANCOIS A. RIVERA,
                    Justice

A P P E A R A N C E S:

        HEPWORTH, GERSHBAUM & ROTH, Pllc
        Attorneys for the Plaintiffs
        192 Lexington Avenue – #802
        New York, New York  10016
        BY:  MARC HEPWORTH, ESQ.
                 -and-
             DAVID ROTH, ESQ.

        LITTLER, MENDELSON, PC
        Attorney for the Defendants
        900 Third Avenue
        New York, New York  10022
        BY:  DANIEL GOMEZ-SANCHEZ, ESQ.

        STEPHEN DONALDSON, ESQ.
        Representing JND, 3d. Party administrator

                            Jennie Fantasia,
                            Senior Court Reporter

MR. ROTH: David Roth on behalf of the plaintiffs. And we have Marc Hepworth, M-A-R-C, H-E-P-W-O-R-T-H. And David, initial A, R-O-T-H from Hepworth, Gershbaum & Roth.

Also on the phone, although I don't see his icon, I believe, is Stephen Donaldson. And that's S-T-E-P-H-E-N. He is not with plaintiff's firm, but he is representing JND, class action administration pursuant to the judge's request.

MR. GOMEZ-SANCHEZ: This is Daniel Gomez-Sanchez, G-O-M-E-Z-S-A-N-C-H-E-Z, from the law firm of Littler, Mendelson P.C., L-I-T-T-L-E-R, M-E-N-D-E-L-S-O-N, P.C. on behalf of the defendants.

MS. JEAN-JACQUES/LAW CLERK: Judge, just to note that the parties have been put their appearances on the record.

THE COURT: Okay.

MS. JEAN-JACQUES/LAW CLERK: I will read the caption into the record and then we can proceed.

Honorable Francois Rivera presiding. Eulalia Martinez DeRodriguez and Guillermina Gomez DeGuzman, individuals, and on behalf of all others similarly situated against All Care Home Health Services, LLC and Benjamin Newman.

Index number 509728 of 2016.

THE COURT: All right. Good morning everyone.

MR. HEPWORTH: Morning, Your Honor.

THE COURT: I see Mr. David Roth. I see Marc -- is that Hepworth?

And I see Jennie as a guest. Would that be the defendant?

MS. JEAN-JACQUES/LAW CLERK: That is Jennie Fantasia, the reporter.

THE COURT: I also see with us Stephen Donaldson.

And Mr. Donaldson, who do you represent?

MR. DONALDSON: This is Stephen Donaldson. I represent JND, the 3rd party administrator.

THE COURT: I got it.

I have Daniel Gomez-Sanchez, I believe, who is the representative of the defendants.

MR. GOMEZ-SANCHEZ: That's correct, Your Honor.

THE COURT: Welcome back.

MR. HEPWORTH: Thank you.

THE COURT: I couldn't legally ask you to come in on Friday, although I would have been happy to, you should know that my court attorney and secretary were all working that Friday because knowing this, we

had a holiday with 24 hours notice, was a little strange to us, but okay, I'll take the holiday.

I just couldn't conduct this proceeding on that day so it required putting it over, but I'm glad everybody is well.

I wanted to say a few things.

The first is I went very carefully over the proposed order. And I also went over the submission in support of the order and you will know, Mr. Hepworth, that this is a monumental event because I don't do this normally.

MR. HEPWORTH:  Understood.

THE COURT:  I think -- let me put it to you this way, your affirmation was one of the finest pieces of legal writing I have seen in a very, very long time. I was pleased. I was delighted to read it.

I, of course, checked on all your citations. It cut in every point, dotted every I, crossed every T and while I know the standard should be that everyone should submit things like this, I've been doing this business for 20-plus years and I have not seen anything this well written in a very long time.

As a matter of fact, I intend to keep it as

a template for how you should analyze class action cases and I also appreciated that you reminded me that I've done a few of these already.

MR. HEPWORTH:  Thank you, Your Honor.

THE COURT:  It's not a quid pro quo, I remember those cases.  It came back to me.  It was many, many years ago.

Anyway, the thing that is the most significant part of this consideration is that the firm has produced an extraordinary result and an extraordinary result in light of the Andryeyeva versus New York Health Care, Inc. case and -- it's the Andryeyeva versus New York Health Care, Inc., and Morena versus Future Care Health Services, Inc.

The citation for Andryeyeva is 33 NY 3d. 152. It was issued in 2019.

The Moreno versus Future Care Health Services had a series of publications including addressing the issue in amicus curiae briefs in the Andryeyeva case.

And what was made clear to me by that case was that had you brought this lawsuit after this case had been published, it would be in a very different position.

I'm not saying that your case would

dissipate, I'm saying that it would be much, much more difficult, at least for the issue involving the conflict between the Department of Labor and what to do about the 24-hour shift, whether that violated the length of work standards, the recovery is -- it's more than reasonable and fair.

It would be, for example, the equivalent of having a case like a car accident case in which I am presented with an infant's compromise order and there's a problem with perhaps meeting threshold, an amount is offered, which is reasonable, not as high as it could be, but becomes reasonable in light of the fact that it may be -- it may even be lost on a threshold issue.

So the recovery amount is an excellent recovery and we did the class well.

MR. HEPWORTH:  Thank you, Your Honor.

THE COURT:  And for all the components I was looking for and what I did, I took Judge Fisher's decision when I was trying to reacquaint myself, because I haven't done these cases in a while, I wanted to find out if the class certification made sense on all points including morality, whether the designated class is not so overbroad, that it included people that had no harm, is it inclusive in

scope, is the method of notification reasonable to yield an opportunity to participate or chose not to participate, that's meaningful, was the amount that is being offered, is it fair and adequate and reasonable.

All these things I was looking at and point by point, I'll tell you, it was fair, it is adequate, it is reasonable. And I did consider the issues of potentially it might be a success on the merits in assessing whether the amount was reasonable.

As I explained to you on the infant comp analysis, it's not a hundred percent, but it's similar. It's a very good outcome in light of the Court of Appeals holding of 2019.

The parties support it, I can infer from the fact that nobody has objected, and they were even given an extended opportunity to see if they wanted to participate or object, and nobody did so I infer that to mean that they consider the settlement amount reasonable.

The value of the settlement with anticipated recovery is already covered.

If you could get 2.4 million at trial, good for you, but then again, I wouldn't be surprised if you could pull that off based on your writings.

MR. HEPWORTH:  Thank you, Your Honor.

THE COURT:  The judgment of counsel in getting this settlement, the appropriateness of attempting the mediation put it in a settlement posture.  I see good faith in the negotiations.

And with regard to giving a little bonus to the people who are representatives of the class, I do consider they do much more then the class members.

They have to be available.  They have to cooperate.  They have to participate.  And that's entitled to compensation in the amount that's being offered to them and is reasonable.

I have no issue with the 10,000.  Not at all.

The issue of attorney's fees, I can do it one of two ways.  I can do it the Lodestar method or go straight percentages.

The differential between the two is somewhere between 500,000 to 800,000.

I have approved the one third ratio in the past and in this case I'm heavily inclined to do it because it provides a bigger recovery to counsel that I think is well earned by, you know, reaching an extraordinarily beneficial settlement so I have no problem with it, that it's more than you probably

would have got under a Lodestar method, none whatsoever.

Under a couple of methods that are referred to for assessing attorney's fees, one has been approved already and sanctioned by appellate authority and I'm doing the one third method because I think it's perfectly fair.

Going through the more than adequately covered issue of the choices in attorney's fees, I'm perfectly fine with the one that you prefer.

I'm thinking if I can think of anything else.

I also, you know, I did go through your education and background and my sense is that this firm is -- this is your specialty.  This is what you do and you do it all the time.

So taking all the factors in assessing competence of counsel and complexity of the case, this is just -- it's easy.  It's a ground ball.

So I'm approving the proposed order in every single aspect with not one iota of it being changed because all of it is supported by the submission.

MR. HEPWORTH:  Thank you, very much.

THE COURT:  Any questions by any of the parties?

MR. ROTH: Your Honor, now that -- I want to say that in my experience, I can't -- I want to say right now to thank you and your staff and everybody so much for taking the time out and spending the time with us because I will tell you that, and I told other people about this, it's been an absolute pleasure working with you and your staff.

I can say this now. I couldn't say that before, okay, but what I want to say is that, you know, I am an officer of the New York State Trial Lawyers and I post every single executive order, every single administrative order, if there's remote deposition, I post them, we set up a COVID-19 site and I can tell you, you know, I don't know what we could do to help you, I can tell you're doing everything you can and I want to say it's greatly, greatly appreciated because we couldn't do anything without you and if there's ever something that us or our firm could ever -- that you can think of that we can help out with or, you know, we're -- we would love to.

This is really important to me that we actually have this opportunity to go through this.

Almost all my cases are getting adjourned and the fact that something so complicated and really, you know, I just want to say thank you because I am --

my level of appreciation I can't express because I'm having, you know, so much trouble where other -- in other venues. People are just not working and I want to say thank you.

I can't tell you -- it's already done so I can say that. I want to thank you guys and even just sending -- timely sending us the Skype invites and all the information, it's greatly appreciated.

Thank you.

THE COURT: My pleasure.

I'm curious, the firm, how many lawyers do you have there?

MR. HEPWORTH: This is Marc Hepworth. We presently have six lawyers in the firm.

THE COURT: Nice.

You two are the bosses, the partners.

MR. HEPWORTH: We have Hepworth and Roth and Charlie Gershbaum is also a partner and we all share the responsibility, Your Honor.

THE COURT: So I guess it is a boutique specialist. I also wondered why don't more people do it because the ability to get attorney's fees when you're successful, it's good stuff.

MR. HEPWORTH: Thank you, Your Honor.

THE COURT: There's nothing you could

possibly do for me other than just continue to practice at the high level that you do.

I have my own wishes.  Each firm has to do what each firm -- I'll let you know what my wish is.

If it's something that you can do anything about at the moment, I would like to see more people like Daniel Gomez-Sanchez or somebody whose last name ends in a vowel or more diversity in the law firms that appear before me, maybe more females, more Latinos, more African-Americans.  I would like to see more of that.  This is not chiding in anyway, it's not reproach, I would like to just to see it.

I know that my mom likes to see that I'm on the bench, so do my relatives, but I would like to be able to say to my family, look, there's a guy just like us.  Looks just like my cousin, like my court attorney Betsy.

I want to see more of that.  If there is ever room for something like that to happen, think about it.  I think a lot of folks would appreciate it.

MR. ROTH:  Will do, Your Honor.

MR. HEPWORTH:  Thank you very much.  Will do Your Honor.

THE COURT:  I will take the order, sign off on it and I'll float it to the E-file today.

And Betsy, we'll send a copy of the signed order as an email attachment to the parties.

MS. JEAN-JACQUES/LAW CLERK:  Will do.

THE COURT:  Thank you.

MR. HEPWORTH:  Thank you very much, Your Honor.

MR. GOMEZ-SANCHEZ:  Thank you.

MR. ROTH:  Thank you.

*        *        *        *        *        *

**Certified to be a true and accurate transcript of the foregoing proceedings.**

Jennie Fantasia
----------------------

*JENNIE FANTASIA, SCR*

*OFFICIAL COURT REPORTER*

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: TRIAL TERM PART 14
- - - - - - - - - - - - - - - - - - - - - - - - X
ROTH AND ROTH, LLP,

                              Petitioner,

                                                    INDEX NO.
        - against -                                 158366/22

LONG ISLAND RAILROAD AND METROPOLITAN
TRANSPORTATION AUTHORITY,

                              Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - X
                         60 Centre Street
                         New York, New York
                         September 25, 2024
                         DECISION


BEFORE:
        HONORABLE ARLENE P. BLUTH,
                                        Justice


APPEARANCES:

    SONIN & GENIS LLC
    Attorneys for the Petitioner
    1 Fordham Plaza, Suite 907
    Bronx, New York  10458
    BY:   ROBERT J. GENIS, ESQ.

    ROTH & ROTH LLP
    192 Lexington Avenue, Suite 802
    New York, New York  10016
    BY:   DAVID A. ROTH, ESQ.

    LANDMAN CORSI BALLAINE & FORD P.C.
    Attorneys for the Respondents
    120 Broadway, 13th Floor
    New York, New York  10271
    BY:  RANI SHULMAN, ESQ.
         SHAYNA A. BRYTON, ESQ.


                              Bonnie Piccirillo
                              Official Court Reporter

Decision

THE COURT:  This was an attorney's fee hearing.

Petitioner is entitled to reasonable fees.  The question here was how much is reasonable.  The Court's inquiry is not just whether the hours were reasonable and whether the hourly rate was reasonable, but because there was argument about those points, the Court -- but because there was argument about those points even though in the end the respondent agreed to the hourly rates, I -- even if the respondents didn't agree to the hourly rates, I determine that the rates for Mr. Roth at a thousand dollars an hour is reasonable for an attorney with his experience and expertise in New York City; and $550 an hour for Mr. Reimel who has been an attorney since 2006 is reasonable, and it might even be low by New York standards for Mr. Reimel; and $675 an hour for Mr. Shields who has been admitted since 2013, more than a decade, is also within reason.

Now, certainly billing $6,887.50 for the petition is extraordinarily reasonable.  This Court has conducted several attorney's fee hearings for FOIL cases, and this Court can only imagine the reason the petition was so cheap is because of petitioner's great experience with FOIL and that he had them in the computer already and he just had to adapt them.

Mr. Roth testified that he brought more -- that

Bonnie Piccirillo - Official Court Reporter

he's brought more than twenty-five, thirty petitions.  Even if petitioner mocked up an old petition, it still takes time to personalize it anyway you look at it.  Less than $7,000 to bring a case in Supreme Court is cheap.

Petitioner then received an answer, a 23-page memorandum of law and an affidavit from Ms. Woodhouse.  Less than $3,000 to review all that stuff is completely reasonable to read and read over the opposition and think about it.

The reply on the petition was charged at $6,971.  Again, less than $7,000.  This is also very reasonable.  I would even say it's cheap.  I've done many, many attorney's fees hearings and lawyers sneeze for more than that.

And point six, so to review the decision -- to review my decision when they lost, which was no doubt very disappointing, that's fair and reasonable.  This Court writes -- I write my decisions for the loser and so the loser can read it, study it and, hopefully, understand why I did what I did.  So, this loser -- I'm not really calling you a loser -- but, you know, the loser in this case could read and understand.

Now, once petitioner found out that the Court's decision was based on misinformation, on information Ms. Woodhouse -- Ms. Woodhouse wrote an affidavit which was false.  Whether she meant it or not to be false I'm not

going there, but it was false.  It was sworn to by respondent.  That the information on the reports were in fact available and on the computer and searchable.  A careful motion to renew was made.

So, that's no longer in the computer banks of the Roth & Roth firm.  That's something that has to be carefully crafted.  So, charging $12,435 to bring that motion to renew with substantial supporting documentation in order to convince the judge that they lost in front of before.  So in order to convince the judge that she should reconsider her prior decision based on new evidence, that's completely reasonable.

This is not, like I said, a markup of a petition.  This is dealing with a false affidavit that was relied upon by the Court which led to an erroneous decision.

Now, I could imagine that once that motion to renew was made, perhaps the Roth & Roth firm -- maybe they know the opposition too much.  But, if I were a lawyer making that motion, I would hope that the other side would just say, Oh, gee, I'm sorry.  Okay, let's settle this.  But, you didn't.

Instead, you put in opposition to that faced with the fact that their people put in false affidavits.  They still opposed.

So, Roth & Roth charging $5,630 to review the

opposition to the motion to renew is not only reasonable, it's really low.  I mean, to say I caught you red handed and then to have an opposition like that, 5,600 is not a lot of money.

The big bill here was the $24,600 on the reply to the motion to renew.  That's the big ticket.

Mr. Roth did it himself at his rate, which is higher than his associates.  It's completely reasonable for Mr. Roth to do the reply himself.  He was most familiar with the case and he had a smoking gun.

Kristin Woodhouse submitted a false affidavit which prevented him from getting the documents to which he was entitled.  He was certainly entitled to take the bull by the horns and draft the final words to the Court himself.  He wanted everyone to know that in his view the LIRR would lie and cheat in order to avoid its legal obligations and throw unwarranted obstacles in his way.  That's his view.  He had every right to decide to do the papers himself and not have an associate do it.  And, of course, this $24,600 was a bigger ticket, larger because it was so personalized.  This reply was not a markup of a prior submission.

The petition only took less than $7,000 because he didn't reinvent the wheel.  Here, for the motion to renew and the reply on that motion, it was not as Mr. Shulman called "recycled."  It was not recycled information.  It was

drafted and crafted personally by the person most knowledgeable. He had a right to staff the case the way he wants; and when the case needed real personalization, when there was a smoking gun and false affidavits, he decided to do the heavy lifting himself. That is certainly fair and reasonable.

So, he has requested $61,000 in fees. There was no request for money for today. And so they requested a sanction. I'm not going to put any sanctions on. Nothing prevents anybody from reporting someone to the disciplinary committee, but I am -- I didn't have a sanctions hearing about that affidavit from Kristin Woodhouse. I don't know if she -- the circumstances of that, whether it was willful or just some lawyer wrote something and she didn't even read it and she signed it. I have no idea.

I'm not going to find sanctions, and there's no authority to charge twice or give it a factor.

So, it is hereby ordered that the attorney's fees of $61,000 by petitioner is granted.

The clerk is ordered to upon presentation of proper papers therefor to issue a judgment in favor of the petitioner, Roth & Roth, and, against the respondents, Long Island Railroad and Metropolitan Transportation Authority, in the amount of $61,000 plus interest from entry of the judgment, plus costs and disbursements.

Bonnie Piccirillo - Official Court Reporter

Decision

That concludes this hearing.

MR. GENIS:  Thank you, Judge.

MR. SHULMAN:  Thank you, your Honor.

THE COURT:  Here are your notes I took away from you.

(Handed back to witness)

THE COURT:  Do you have the reporter's information?

MR. GENIS:   I already have her card.

THE COURT:  If you need me to so order the transcript, I can do that.

MR. GENIS:  Thank you, Judge.  Appreciate the time you gave us as well.

(Certification on next page)

**C E R T I F I C A T I O N**

INDEX NO. 158366/22   ROTH AND ROTH, LLP versus
                      LONG ISLAND RAILROAD and MTA

                              ---

                      THIS IS HEREBY CERTIFIED TO BE A
                      TRUE AND CORRECT TRANSCRIPT.

                      *Bonnie Piccirillo*
                      BONNIE PICCIRILLO
                      OFFICIAL COURT REPORTER